THE ARABOL MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50489.   Promulgated September 30, 1932.

*H. A. Mihills, C. P. A.,* for the petitioner.
*Bernard D. Hatchcock, Esq.,* for the respondent.

### OPINION.

ARUNDELL: The deficiency involved in this proceeding is for income tax in the amount of $3,214.74 for 1928, which resulted, in part, from the disallowance of a claimed deduction of $24,000 paid out in compromise of a claim for excessive commissions charged for the sale of goods. Whether the amount is allowable as a deduction in the taxable year is the only question at issue.

In January, 1910, the petitioner, a New York corporation engaged in the business of manufacturing and selling adhesives and textile sizing, entered into a written agreement with the Chemische Werke Hansa, G. M. B. H., of Hemelingen, Germany, hereinafter to be called the German company, providing, among other things, for the organization under the laws of New York of a corporation to be known as the Amid Duron Company and the manufacture and sale by the petitioner for the Amid Duron Company of products under patents held by the German company. The corporation was formed. One-half of its capital stock was purchased by the German company and the remainder by the petitioner.

On February 11, 1910, the petitioner contracted with the Amid Duron Company to manufacture and sell its products, assume credit risks of customers, and keep its books and provide it with office room and equipment for the following commissions based upon sales of products of the Amid Duron Company: manufacturing, 12 per cent; selling products, 10 per cent; office facilities, 8 per cent; assuming credit risks of customers, 1 per cent. The provisions of the contract covering the commission payable on sales reads, in part, as follows:

The party of the first part agrees during the term of this agreement to use its best efforts and endeavors to sell the said goods, products and preparations, but all sales shall be made by the party of the first part at prices fixed by the party of the second part and only at such prices. For all such sales made by

the party of the first part, the party of the second part agrees to pay a commission of 10% thereon; said commissions to be paid on the 10th day of each month for all goods delivered and paid for during the preceding months.

Thereafter the petitioner, in addition to the other commissions payable under the contract, charged the Amid Duron Company each month, and was paid, selling commissions equal to 10 per cent of the latter's gross sales. The charges were made whether the goods were sold by petitioner's salesmen or employees of the Amid Duron Company engaged in selling the products of both corporations.

During the latter part of 1927 the German company took the position that under the contract of February 11, 1910, the selling commission of 10 per cent was not to be charged on sales made by employees of the Amid Duron Company. Without asking for refund of any specific amount to the Amid Duron Company, the German company demanded that an adjustment be made for the excessive commissions charged during the five or six previous years, and threatened to litigate the matter unless the claim was paid. The petitioner estimated that the alleged excess payments amounted to about $43,000.

The petitioner referred the claim to its counsel, who advised against letting the claim go to suit and recommended that it be settled out of court. Later in 1927 the petitioner authorized its counsel to negotiate a compromise settlement. In 1928 the petitioner, without admitting liability in any amount, agreed to an adjustment of the claim, and pursuant thereto, on April 18, 1928, it paid the Amid Duron Company $24,000 in full satisfaction of the claim.

The parties differ only as to the manner in which the sum paid should be reflected in petitioner's returns. The petitioner claims the right to deduct it in 1928. The respondent contends that the payment was for preexisting liabilities and that the amount should be excluded from gross income in the years in which the excessive commission charges were paid.

The evidence makes clear that the commissions were charged and paid on the theory that under the terms of the contract the petitioner was entitled to a selling commission of 10 per cent, regardless of whose employees sold the goods. The reports rendered annually by the Amid Duron Company to the German Company of its operations showed an expense item, characterized "Service," equal to 31 per cent of all sales of its products. These statements were approved in every instance by at least a majority of the directorate of the Amid Duron Company, which consisted of two men appointed by the German company and two designated by the petitioner. The German company appointed new directors every two or three years and during the war the Alien Property Custodian had representation on the board of directors.

Until late in 1927 all of the interested parties accepted the charges as being strictly in accordance with the contract. When claim was made that the amounts paid for sales were in excess of the commissions allowable under the agreement, the petitioner denied liability. The petitioner never receded from this position, but in 1928 agreed to settle the demand by a payment of $24,000.

The respondent took the same position in *Trippensee Manufacturing Co.*, 15 B. T. A. 15. There a claim was filed against the petitioner in 1921 for alleged overcharges made in 1919, 1920 and 1921 under a contract for the manufacture of articles. The billings were made in accordance with the petitioner's construction of the contract. After some discussion and negotiation the petitioner consented to adjust the claim and in 1921 credited the claimant's account with the amount agreed upon. In holding the sum credited to be deductible in 1921, we remarked that " The existence of a cause of action or facts upon which a claim for compensation may be asserted is not determinative of liability."

In *Price Iron & Steel Co.* v. *Burnet*, 45 Fed. (2d) 921, the appellant during 1920 purchased and paid for scrap iron according to the grading then recognized. In 1924 the seller demanded from it a sum for wrongful classification of the material. The amount paid in 1925 in settlement of the claim was sought to be added to the costs of goods sold in 1920. In denying the asserted right, the court remarked:

What occurred in 1925 was an additional payment due to a mistake in classification and grading of the scrap iron, a liability which occurred in 1925, and not in 1920. It constituted a separate transaction growing out of the dealings of 1920. At most, it constituted an item which, if deductible at all, would belong to the return for 1925, and not for 1920, and could not, we think, relate back to the 1920 return in such manner as to be regarded as an additional part of the purchase price of the goods for that year.

The amount of $24,000 paid by the petitioner in 1928 in settlement of the claim is deductible from gross income in that year.

*Decision will be entered under Rule 50.*