CANNON VALLEY MILLING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96330. Promulgated June 19, 1941.

*Kenneth Taylor, Esq.*, for the petitioner.
*L. W. Shaw, Esq.*, for the respondent.

OPINION.

MELLOTT: The respondent determined a deficiency of $101,249.37 in petitioner's income tax and a deficiency of $36,579.21 in its excess profits tax for the fiscal year ended June 30, 1935. The instant proceeding involves only the portion of the deficiencies attributable to the disallowance of a claimed deduction of $29,423.45 from gross income. It was submitted upon a stipulation of facts, all of which we find to be as stipulated.

Stated generally, the question is: May petitioner be allowed a deduction of $29,423.45 from its gross income in 1935, this being the aggregate amount paid to its vendees in 1937 in compromise of their claims for reimbursement of processing taxes included in the selling price of wheat products sold by petitioner to them during May and June 1935?

For present purposes the facts may be summarized as follows:

Petitioner, a Minnesota corporation, having its principal office at Minneapolis, duly filed its income tax return for the fiscal year ended June 30, 1935, with the collector of internal revenue for the district of Minnesota. Its books were kept on an accrual, as distinguished from a cash, basis.

During the taxable year and for many years prior thereto petitioner was engaged in the business of milling wheat and selling flour and other wheat products. As a first domestic processor of wheat it was subject to the provisions of the Agricultural Adjustment Act of 1933, as amended. Pursuant to the provisions of that act, it paid to the Federal Government a tax of 30 cents a bushel on the wheat processed from July 1, 1933, to April 30, 1935, inclusive.

In June 1935 petitioner instituted an action in the United States District Court for the District of Minnesota to enjoin the collector of internal revenue for the district of Minnesota from collecting processing taxes upon wheat processed during the months of May and June 1935. The court granted temporary injunctions upon the condition that petitioner deposit with it the amount of taxes due on account of wheat processed during these months, pending final decision

as to the constitutionality of the Agricultural Adjustment Act. Pursuant to the order of the court petitioner made the following deposits:

| Tax due for— | Date deposited | Amount |
|---|---|---|
| May 1935 | July 1, 1935 | $28,126.50 |
| June 1935 | Aug. 2, 1935 | 25,021.50 |
| Total | | 53,148.00 |

During subsequent months of 1935, under similar conditions, amounts aggregating $170,131.50 were deposited.

Following the decision of the Supreme Court of the United States in *United States* v. *Butler*, 297 U. S. 1 (Jan. 6, 1936), declaring the Agricultural Adjustment Act invalid, the injunctions were made final and on January 23, 1936, there was returned to petitioner the sum of $222,998.24 ($223,279.50 less a deposit fee of $281.26 retained by the clerk of the court). On that date petitioner set up on its books a reserve account reading "Processing Tax Payable Special— $222,998.24." No part of this sum was reported as income in petitioner's returns either for the fiscal year ended June 30, 1936, or for the fiscal year ended June 30, 1937.

All of the wheat products processed and sold by petitioner during the months of May and June 1935 were sold under written contracts fixing a definite price for the products, which included, but did not apportion nor separately state, the amount of processing tax payable by petitioner under the Agricultural Adjustment Act. These contracts contained a provision that if any increase in the processing tax should become effective while any portion of the commodities covered by the contract should remain undelivered, the amount thereof should be paid by the buyer. They also provided:

Any decrease in the processing tax as now or hereafter imposed by the United States shall inure to the benefit of the buyer and be credited against the contract price named in this contract to the extent—and only to the extent—that the grain used in the manufacture of the product covered by this contract is milled after the decrease in the processing tax takes effect and to the extent that the seller is thereby relieved from the processing tax; * * *

All deliveries under contracts for the sale of products processed and sold by petitioner during the months of May and June 1935 were made by petitioner as required by the contracts referred to above prior to July 1, 1935, and the full purchase prices provided in the contracts were paid to the petitioner by the vendees thereunder prior to January 1, 1936. The contracts contained no provision for a refund to the vendees of all or any part of the processing tax in the event such tax should be held to be illegal.

From and during May and June 1935 and thereafter, and particularly after the decision in *United States* v. *Butler, supra,* numerous claims were made against petitioner by vendees to whom it had sold wheat products processed during the months of May and June 1935 and during the latter part of 1935, for reimbursement of the amount of processing tax upon the products purchased by them from petitioner during that period. Petitioner at all times refused to admit any legal liability, either under the provisions of the contracts of sale set out in the stipulation or upon any other ground. In order to avoid threatened litigation, to keep the good will of its customers, and to compromise the claims, however, petitioner, during its fiscal year ended June 30, 1937, refunded to its vendees amounts aggregating $134,190.91. Payments to the vendees were made upon the basis of $1 of the approximately $1.38 of processing tax applicable to a barrel of the product purchased. $29,423.45 of the amount refunded to petitioner's vendees was paid in connection with wheat processed and sold during May and June 1935, the balance ($104,757.46) being in connection with wheat processed and sold during petitioner's fiscal year ended June 30, 1936, and prior to January 6, 1936.

In petitioner's Federal income and excess profits tax return for the year ended June 30, 1935, it deducted the sum of $53,148 on account of processing taxes for the months of May and June 1935. In the notice of deficiency this deduction was disallowed by the respondent.

The petition alleges that the "respondent's action in disallowing the deduction of processing taxes in the amount of $53,148.00 * * * is improper unless there be allowed as a deduction from gross income for the taxable year the amount of reimbursements made by the taxpayer to its customers on account of unpaid processing taxes with respect to deliveries made during the taxable year * * *."

The following schedule summarizes many of the facts and indicates the contentions of the respective parties:

| Year | Net income | | | |
|---|---|---|---|---|
| | A | B | C | D |
| | Reported on return | Without considering deductions because of reimbursements | Per petitioner's contention | Per respondent's contention |
| 1935 | [1] ($577.31) | $50,464.03 | [2] $21,040.58 | $50,464.03 |
| 1936 | Not shown | 154,540.69 | [2] 49,773.23 | 154,540.69 |
| 1937 | (18,032.22) | (18,032.23) | (18,032.22) | [3] (152,223.13) |

[1] The figures in parentheses indicate losses.
[2] Petitioner deducts from its net income as shown in column B the $29,423.45 paid to its vendees on account of wheat processed and sold during May and June 1935, and the $104,757.46 paid to its vendees in connection with wheat products sold during its fiscal year ended June 30, 1936, and prior to January 6, 1936, thus arriving at the above amounts.
[3] Respondent has not yet audited or revised petitioner's return for 1937. He claims, however, that the payments to petitioner's vendees, aggregating $134,190.91, are deductible only on its income and excess profits tax returns for the year 1937.

The Department has ruled [1] that amounts paid by processors in settlement of contracts containing the clauses set out above, which contracts were entered into during the "injunctive period", are deductible as ordinary and necessary business expenses. The ruling concludes in the following language:

It is held that the deductions on account of such reimbursements under the contracts here in question may be taken by the processors for the year in which reimbursements were actually made or, where the processors keep their accounts and file their returns on the accrual basis, for the year in which they agreed with the vendees to settle or compromise the disputed claims.

Obviously relying upon and giving effect to this ruling, respondent has stipulated that the payments to petitioner's vendees in the total amount of $134,190.91 "are properly deductible from gross income in computing petitioner's net income for some taxable year." He claims, however, that under the stipulated facts the payments are deductible only in the return for the fiscal year ended June 30, 1937.

Petitioner places its chief reliance upon section 43 of the Revenue Act of 1934. It contends that the payments to its vendees, being proper deductions from its gross income for some taxable year, should be prorated and the proportion thereof allocable to the products sold in the fiscal year 1935 should be allowed as a deduction in computing its income for that period "in order to clearly reflect its income." The section relied upon and related sections 41 and 42 are shown in the margin.[2]

The first query that arises is: Are the payments deductions within the meaning of the revenue act? Apparently both parties consider

[1] G.C.M. 20134, C. B. 1938-1, p. 122.

[2] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year. (For use of inventories, see section 22 (c).)

SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period.

SEC. 43. PERIOD FOR WHICH DEDUCTIONS AND CREDITS TAKEN.

The deductions and credits provided for in this title shall be taken for the taxable year in which "paid or accrued" or "paid or incurred", dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. In the case of the death of a taxpayer there shall be allowed as deductions and credits for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly allowable in respect of such period or a prior period.

them to be, though their stipulation to that effect is not controlling. *Ohio Clover Leaf Dairy Co.*, 8 B. T. A. 1249; affd., 34 Fed. (2d) 1022; certiorari denied, 288 U. S. 588; *William Ernest Seatree*, 25 B. T. A. 396; affd., 72 Fed. (2d) 67. They were made, in the language of the stipulation, "in order to avoid threatened litigation, keep the good will of its [petitioner's] customers, and compromise" the "numerous [disputed] claims * * * made against petitioner by vendees to whom it had sold wheat products processed during the months of May and June, 1935." Such payments, we think, must be held to be ordinary and necessary expenses of carrying on a trade or business and hence "deductions" under section 23 (a) of the Revenue Act of 1934. *Superheater Co.*, 12 B. T. A. 5; affd., 38 Fed. (2d) 69; *O'Day Investment Co.*, 13 B. T. A. 1230; *H. M. Howard*, 22 B. T. A. 375; *International Shoe Co.*, 38 B. T. A. 81, 95; *Helvering v. Hampton*, 79 Fed. (2d) 358; and *Welch v. Helvering*, 290 U. S. 111.

The income tax is assessed upon the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed period according to the method of accounting employed. *Burnet v. Sanford & Brooks Co.*, 282 U. S. 359. Under an accrual, as distinguished from a cash, basis, the general rule is that income and deductions are accruable when all events have occurred fixing the liability and determining the amount. *North American Oil Consolidated v. Burnet*, 286 U. S. 417; *United States v. Anderson*, 269 U. S. 422; *American National Co. v. United States*, 274 U. S. 99; *Helvering v. Union Pacific Railroad Co.*, 293 U. S. 282. "As to both income and deductions it is the fixation of the rights of the parties that is controlling." *Commissioner v. Darnell, Inc.*, 60 Fed. (2d) 82. The cases applying the general rule referred to above are numerous. Many of them, and especially those which have held that a deduction can not be taken by a taxpayer on an accrual basis until the year in which its disputed liability is finally determined or admitted, are cited by respondent. *Lucas v. American Code Co.*, 280 U. S. 445; *Tomson & Co. v. Commissioner*, 82 Fed. (2d) 398; *Price Iron & Steel Co. v. Burnet*, 45 Fed. (2d) 921; *Central Trust Co. v. Burnet*, 45 Fed. (2d) 922; *New Process Cork Co.*, 3 B. T. A. 1339; *Bump Confectionery Co.*, 4 B. T. A. 50; *Louis Kratter*, 4 B. T. A. 52; *Hamler Coal Co.*, 4 B. T. A. 947; *Empire Printing & Box Co.*, 5 B. T. A. 203; *Lynchburg Colliery Co.*, 7 B. T. A. 282; *Thorne, Neale & Co.*, 13 B. T. A. 490; *Trippensee Manufacturing Co.*, 15 B. T. A. 15; *Arabol Manufacturing Co.*, 26 B. T. A. 1068. In this connection he relies especially upon the fact that the 1935 sales contracts did not impose upon petitioner any legal obligation to make the reimbursements to its vendees.

Most of the cited cases arose under acts prior to the 1924 Act, which, through section 200 (d) thereof, first incorporated in the

revenue law the provision set out in the concluding clause of the first sentence of section 43, *supra.* They involved the application of the general rule for the accrual and deduction of liabilities under the accrual method of accounting and the exception now under consideration was not involved or discussed.

Petitioner cites and relies principally upon *William S. Linderman, Executor,* 28 B. T. A. 113; reversed on rehearing, 84 Fed. (2d) 727; certiorari denied, 299 U. S. 589; *Carondelet Building Co.* v. *Fontenot,* 111 Fed. (2d) 267; *K. Taylor Distilling Co.,* 42 B. T. A. 7 (on appeal C. C. A., 6th Cir.); *Sanford Cotton Mills, Inc.,* 42 B. T. A. 190. The two last mentioned cases are distinguishable from the instant proceeding on their facts, and, since they do not involve any departure from the regular accrual method of accounting, it would serve no useful purpose to discuss them.

In the *Linderman* case, the books and accounts of a deceased incompetent had been kept and returns of her income had been filed on the cash basis. Expenses incurred prior to her death on November 13, 1929, were not paid until subsequent thereto. This Board and the Circuit Court of Appeals for the Third Circuit held that the expenses incurred during the guardianship should be deducted from the gross income of that period rather than from the gross income of the estate in order that the net income of the guardianship should be clearly and properly reflected. Section 43 of the Revenue Act of 1928 was cited, which is identical to the first sentence of section 43 of the Revenue Act of 1934, *supra.* On rehearing the deduction was disallowed by the court on the ground that the guardianship expenses were not business expenses, an issue which was not raised before the Board.

In *Carondelet Building Co.* v. *Fontenot, supra,* the taxpayer was on an accrual basis, its fiscal year ending September 30. On May 10, 1934, the day following its organization, it purchased a building and its income consisted almost entirely of rents therefrom. Prior to the purchase, the building had been assessed for 1934 taxes. City taxes amounting to $24,406 were paid on September 26, 1934, and state taxes amounting to $10,326 were paid on December 28, 1934. The taxpayer treated the aggregate taxes as an expense incurred in earning the monthly rents, prorated the taxes one-twelfth to each calendar month, and claimed a deduction for taxes accrued of $13,517 for the period May 10 to September 30, 1934. The Circuit Court of Appeals for the Fifth Circuit approved the taxpayer's method of proration on the ground that the rents ought to bear the monthly pro rata of the annual taxes in order fairly to reflect net income, although it held that the taxes did not, in strictness, become a liability of the taxpayer until it decided to assume and pay them.

The cases cited by the respective parties furnish but slight aid in determining the issue now before us. Despite the presence of the remedial provision in all of the revenue acts from 1924 to the present, few instances have arisen in which the courts or this Board have had occasion to consider it. Perhaps that is so because, in the great majority of cases, income is clearly reflected by taking the deductions and credits in accordance with the method of accounting employed. Yet the provision is not meaningless and its presence in the revenue act should not be ignored. Respondent does not contend that it should be; his principal argument is that no facts are shown justifying its application.

Implicit in the argument of the parties and, we think, in the section itself, is the conclusion that each case must be considered upon its facts in order to determine if the method of accounting regularly employed should be disregarded "in order to clearly reflect the income." The legislative history likewise supports this view.[3] It is appropriate, therefore, that the facts be examined carefully.

It will be noted that, whether petitioner's income is computed by the method which it insists should be used, or by the method used by the respondent, the result of the three years' operations is the same, viz., a net income of $52,781.59 or an average of approximately $17,593 per year. This amount is much larger than petitioner's net income for any of the five years immediately preceding, or for either of the two years immediately succeeding, the period set out in the computation, though the number of barrels of flour produced did not vary greatly. (Petitioner's net income from 1930 to 1934 ranged from a net loss of $21,354.43 in 1932 to a net income of $7,305.14 in 1933. Its net loss was $22,192.59 in 1938 and $33,657.72 in 1939.) But petitioner is not asking that the three years be consolidated and its income be computed upon that basis. Manifestly that could not be done. *Burnet* v. *Sanford & Brooks Co., supra.* It urges only that, in computing its income for the years 1935 and 1936 (only 1935, however, is involved in this proceeding), it should be permitted to deduct the reimbursements actually made in 1937 to its vendees upon the products purchased by them in such years.

It is obvious from an examination of the computation made by the respondent that petitioner is being taxed upon an income of $50,464.03 in 1935 and $154,540.69 in 1936, a total of $205,004.72, whereas in fact—if the subsequent reimbursements to its vendees upon, and

---

[3] When the amendment incorporating the exception in the act was being considered in Congress the Ways and Means Committee in its report said:

"* * * The necessity for such a provision arises in cases in which a taxpayer pays in one year interest or rental payments or other items for a period of years. If he is forced to deduct the amount in the year in which paid, it may result in a distortion of his income which will cause him to pay either more or less taxes than he properly should." Rept. No. 179, Committee on Ways and Means, 68th Cong., 1st sess., p. 11.

applicable to, the sales in those years be considered—the actual result of its operations was a net income of $21,040.58 for 1935 and a net income of $49,773.23 for 1936, or a total of $70,813.81. Under respondent's computation a similar distortion of petitioner's true income for 1937 also results. Thus, the business actually transacted by it during 1937 resulted in a net loss of $18,032.22 (assuming in this connection that the amount reported by it in its return is correct). If the amounts paid to its vendees which have no relation whatever to the sales made in that year are deducted, the result of its operations is a loss of $152,223.13.

The real issue here is: What is the correct amount of petitioner's taxable income for its fiscal year ended June 30, 1935? We now know that it is not entitled to the deduction for processing taxes which it accrued upon its books and claimed in its return. We also know that it made certain deductible reimbursements in a later year of part of the proceeds of the sales made during the period covered by the return. Obviously the disallowance of the deduction for the processing taxes and a disallowance of the deduction now claimed for reimbursements will result in petitioner being taxed upon a greater profit than was realized from its 1935 sales.

"Taxation is an intensely practical matter, and laws in respect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences." *Farmers Loan & Trust Co.* v. *State of Minnesota*, 280 U. S. 204, 212. The objective of all accounting methods is to "clearly reflect income." The ideal method would be to charge against income earned during a taxable period the expenses attributable to the earning of it. The computation of net income upon the basis of a taxpayer's annual accounting period in accordance with the method of accounting regularly employed does not always accomplish the desired objective. Section 43 was intended to aid in accomplishing it. While no limitation was placed upon its application, we are of the opinion that it was intended to apply to unusual and exceptional situations such as we have here. It is quite unlikely that this petitioner will ever again make, or be called upon to make, any reimbursements of the kind here involved. They were of a nonrecurring nature and resulted primarily from a judicial decision that the act imposing the processing tax was invalid. They could not have been foreseen on June 30, 1935, the end of petitioner's fiscal year. They, however, represented payments under claims relating to 1935 sales. If such sales had not been made there would have been no basis for the claims and no reimbursements. They were not in any sense of the word related to sales made in 1937 and were not proper charges against the income of that year.

Upon brief respondent urges that petitioner can not be given the relief sought because of the provisions of article 43–1 (*a*) of Regulations 86.[4] He points out that a similar regulation has been in effect for many years; that the regulations have always required his decision "as to whether the special treatment of section 43 is applicable"; that he has determined it is not applicable in the instant proceeding; and that "the regulations, making [his] decision final, having stood through many reenactments of the statute, now have the force and effect of law." *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110, is cited in support of this contention.

Section 41 provides that if no method of accounting has been employed by a taxpayer, or if the method employed does not clearly reflect the income, "the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." This section, however, is not applicable here and no such language is used in section 43. It authorizes deductions or credits to be taken in a different period if necessary "to clearly reflect the income." The Commissioner's decision is not made a prerequisite and the statute does not provide that any decision made by him is *final*. If the regulation should undertake to do so (though we do not so interpret it) it would, to that extent, be a nullity; for the Department can not, by regulation, either extend or limit an act of Congress. *Helvering* v. *Powers*, 293 U. S. 214. The power to prescribe rules and regulations "is not the power to make law  *  *  * [but]  *  *  *  to carry into effect the will of Congress as expressed by the statute." *Manhattan General Equipment Co.* v. *Commissioner*, 297 U. S. 129; *Commissioner* v. *Winslow*, 113 Fed. (2d) 418. But in the view which we take, it is unnecessary to determine whether the regulation is, or is not, a proper one. No doubt it is desirable, from an administrative standpoint, that the Commissioner determine if a taxpayer shall be permitted to take his deductions in a different period, just as he determines "what is carrying on a business, subject to reexamination of the facts by the Board of Tax Appeals and ultimately to review on the law by the courts on which jurisdiction is

---

[4] ART. 43–1. *"Paid or incurred" and "paid or accrued."*—(*a*) The terms "paid or incurred" and "paid or accrued" will be construed according to the method of accounting upon the basis of which the net income is computed by the taxpayer. (See section 48 (c).) The deductions and credits provided for in Title I must be taken for the taxable year in which "paid or accrued" or "paid or incurred," unless in order clearly to reflect the income such deductions or credits should be taken as of a different period. If a taxpayer desires to claim a deduction or a credit as of a period other than the period in which it was "paid or accrued" or "paid or incurred," he shall attach to his return a statement setting forth his request for consideration of the case by the Commissioner together with a complete statement of the facts upon which he relies. However, in his income tax return he shall take the deduction or credit only for the taxable period in which it was actually "paid or incurred," or "paid or accrued," as the case may be. Upon the audit of the return, the Commissioner will decide whether the case is within the exception provided by the Act, and the taxpayer will be advised as to the period for which the deduction or credit is properly allowable.

conferred." *Higgins* v. *Commissioner*, 312 U. S. 212. So applied, the regulation would no`doubt be valid, especially in a situation where a taxpayer has made payments in an earlier year which should appropriately be deducted from the income of a later year. Here, however, the payments, which we believe should appropriately be deducted from the income of an earlier year, were not made until a later year. The regulation was not designed to take care of the latter situation. But that need not disturb us; for the statute makes no distinction. It is to be applied whenever such application is necessary "in order to clearly reflect income."

We are of the opinion that the claimed deduction should be allowed in recomputing petitioner's income for the taxable period before us.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

Disney, Kern, and Opper concur only in the result.

---

Murdock, dissenting: The prevailing opinion recognizes that this is not a case under section 41 involving an improper system of accounting for and reporting income. It also recognizes that the amounts in controversy were not actually accrued and could not have been accrued during the taxable year because no events had occurred during that year fixing a liability or determining the amount of any liability. The opinion is based entirely upon the proposition that the peculiar facts in this case require a deduction under section 43 in order to clearly reflect income, even though the item was not paid, accrued, or incurred during 1935, and even though, in all other respects, the accounting method of the taxpayer was entirely satisfactory.

The Board apparently finds that the item is deductible under section 23 (a), which allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." This item was not paid or incurred during the taxable year. Since it was not an accruable expense of that year, it can not be allowed as a deduction for 1935 unless section 43 applies. The prevailing opinion does not demonstrate to my satisfaction that section 43 applies. The only relation which the item has to 1935 is that it grew out of transactions which occurred in that year. In so far as it was paid in 1937 to retain the good will of customers, it could not be justified under any theory as an ordinary and necessary expense of 1935. The petitioner earned a certain amount in 1935 which it thereafter retained as its own. Although as time went on vendees began to make claims, the petitioner consistently denied

liability on those claims and no liability is established. After thus denying liability, and after paying only a part of the sums claimed by the vendees, the petitioner asks for relief under section 43. So far as the evidence shows, the petitioner might never have paid anything to the vendees had it not desired to retain their good will after 1937. I see no justification for relating back to 1935 under section 43 an amount thus paid in 1937. This case presents no exception to the general rule that deductions must be taken only when they are paid, accrued, or incurred in accordance with the accounting system regularly used. Cf. *Estate of William H. Block*, 39 B.T.A. 338; affd., 111 Fed. (2d) 60.

Tyson agrees with this dissent.

Arnold, dissenting: I do not agree with the conclusion of the majority because in my opinion it errs in two respects. In the first place, the justification for the conclusion reached rests solely upon the exception contained in section 43, the application of which, it is held, will more clearly reflect petitioner's income for the taxable year. Secondly, while the majority opinion relies upon section 43, it ignores the reasonable requirement contained in the Commissioner's regulations dealing with the application of the exception.

In my opinion petitioner's income is more clearly reflected by a computation in accordance with the method of accounting regularly employed in keeping its books than by the departure therefrom approved by the majority. Petitioner's 1935 sales of flour were closed and completed transactions of that year. No obligation, express or implied, existed during 1935 to make reimbursement of any part of that year's gross sales. The liability to vendees was first "paid or accrued" or "paid or incurred" in 1937 under agreements voluntarily entered into in that year, and, under the accrual system of accounting regularly employed by petitioner, such disbursements should properly be accounted for in that year. Accounting for 1937 liabilities in 1935 will not clearly reflect 1935 income; it distorts the income of both years. This Board should not permit a remedial provision of the statute to be used to distort income merely because the net result of shifting the deduction is to lessen a taxpayer's liability for taxes.

Section 43, so far as pertinent, appeared first in the Revenue Act of 1921, and provided that *losses* should be deducted in the year sustained, "unless, in order to clearly reflect the income, the loss should, in the opinion of the Commissioner, be accounted for as of a different period." Sec. 234 (a) (4).

In the Revenue Act of 1924, Congress extended the principle in the 1921 Act relating to deduction of losses to *all deductions* and *credits*.

In section 200 (d) thereof it provided that "The deductions and credits provided for in this title shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed under sections 212 or 232, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period."

Section 212 of the Revenue Acts of 1924 and 1926 and section 41 of each succeeding revenue act delegate to the respondent the power to determine whether the method of accounting employed by a taxpayer clearly reflects its income, and, "if the method employed does not clearly reflect the income", the statute provides that "the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." Sec. 41, Revenue Acts of 1934 and 1936.

Respondent's regulations have consistently construed section 43 and its prototypes as requiring compliance with certain formalities as a prerequisite to shifting a deduction to a different period. Art. 146, Regulation 62; art. 43–1, Regulations 86 and 94. See also T. D. 3261 (1921), I–1 C. B. 148. The regulations have always required a taxpayer to take the deduction in the year "paid or accrued" or "paid or incurred" and to submit with the return a complete statement of facts upon which it relies to take deductions as of a different taxable year. The Commissioner would then have the information before him and the years affected, from which it could be determined whether income would be more clearly reflected by shifting the deduction to the period requested. The requirement in the regulations is, in my opinion, a reasonable one and imposes no hardship upon a taxpayer. The successive reenactments of the statutory provisions without alteration must be taken as an approval by Congress of the administrative construction and to have imparted to the regulations the force and effect of law, *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110, and unless petitioner has complied with the distinct method provided for in the regulations, it can not avail itself of the exception contained in section 43. *Stokes* v. *United States*, 19 Fed. Supp. 577, 580.

The record here does not show that petitioner deducted the repayments on its 1937 return or submitted a statement of facts upon which it relies, or requested that such deductions be taken as of a different period. Had the petitioner complied with the requirements of the regulations and had the Commissioner disallowed the deduction from 1935 gross income, it would be the province of the Board to determine whether or not petitioner's income would be more clearly reflected by allowing the deduction as of the period claimed. Any shifting of credits and deductions from the year in which they are "paid or accrued" or "paid or incurred" to another

taxable period changes the net income of both periods. Unless the information called for in the regulations is furnished the Commissioner, he can not determine whether the income will be more clearly reflected or not, nor can the Board on review of the Commissioner's determination.

The majority opinion computes net income upon the net result of a transaction or series of transactions spread over two or more taxable years. Such an interpretation will lead to endless delays and confusion in determining and closing tax liabilities. While here the exception works to the taxpayer's advantage, taxable income, to be clearly reflected, can not be determined upon the basis of advantage or disadvantage either to the taxpayer or the Government in any one particular year.