PACIFIC NOVELTY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8162.   Promulgated January 8, 1927.

The amount by which a debt was reduced under the terms of a composition agreement was a deductible loss in the year in which the agreement was made.

*James C. Peacock, Esq.*, for the petitioner.
*Arthur H. Murray, Esq.*, for the respondent.

This proceeding results from the determination of a deficiency in income and excess-profits taxes for the calendar year 1920 in the amount of $5,310.23. Only a part of the deficiency is in controversy. Error is assigned in that the respondent disallowed as a deduction a debt of $9,758.99 which the petitioner avers was ascertained to be worthless and charged off within the taxable year. The proceeding was submitted upon stipulation executed by counsel for respective parties.

FINDINGS OF FACT.

Petitioner is a New York corporation with principal offices at 41 East Eleventh Street, New York City.

During the year 1920 the taxpayer charged off on its books as a bad debt $9,758.99, being 75 per cent of the total indebtedness of $13,011.93 owed to it by Samuel and Augusta Wolfson (trading under the name of and hereinafter referred to as the Globe Manufacturing Co.) of Worcester, Massachusetts. The taxpayer deducted the said $9,758.99 on its return for 1920 and the Commissioner disallowed it.

The Fiberloid Corporation, E. I. DuPont DeNemours & Co., the Worcester Trust Co., and the taxpayer, were the principal creditors of the Globe Company. During the early part of 1920 the Fiberloid Company had attached certain assets of the Globe Company and in this way had already secured an advantage over the other creditors. In order to avoid having the advantage thus gained set aside by bankruptcy proceedings initiated by another creditor, within the four-month period allowed by the Bankruptcy Act for setting aside such a preference, the Fiberloid Company entered into a written agreement on July 1, 1920, with the DuPont Company providing for a compromise arrangement with the debtor whereby the latter was also to pay over its entire income to be divided ratably between them.

In order to avoid having their joint preference set aside by bankruptcy proceedings, these two creditors were in turn obliged to let

in on the same basis the Worcester Trust Co. They also invited the taxpayer to join them, and the Globe Company, at the same time, endeavored to arrange a settlement with all four creditors at 25 cents on the dollar. The several creditors conferred among themselves, and in particular the president of the taxpayer and the attorney for the DuPont Company, at the request of the latter, had several conferences together at the latter's office.

After full investigation, it was found that under no conditions could the Globe Company possibly pay more than 25 per cent of its indebtedness and, after ascertaining this condition, the taxpayer, shortly after July 1, 1920, agreed to join the other creditors and accept 25 per cent in full payment of its claim.

The taxpayer had agreed, as already set forth, to join the three other creditors in a composition agreement and to accept 25 per cent in full settlement, and, accordingly, having ascertained that no greater amount could, under any conditions, be recovered, charged off in 1920 the remaining 75 per cent of the debt owing to it.

No written agreement with either the debtor or other creditors was signed by the taxpayer, it being its understanding that the attorney for the DuPont Company would take care of any formalities necessary to carry out this agreement, but, through a misunderstanding, he did not do so, having assumed that the attorney for the Fiberloid Company had already done so. As a result of this misunderstanding, which was not discovered until after the expiration of the four-month statutory period, the taxpayer was deprived of any share even in the 3½ cents on the dollar, which was all that was actually realized by the three other creditors, and has never recovered any part of the debt of $13,011.93.

The Globe Manufacturing Co. ceased to do business about May, 1921, and its liquidation was completed in November, 1921. The taxpayer, on December 31, 1921, charged off on its books the remaining $3,253 owed to it by the Globe Company.

OPINION.

MILLIKEN: The question here presented is whether the deduction of $9,758.99, claimed by petitioner as a bad debt deduction for 1920, was an allowable deduction under section 234 of the Revenue Act of 1918. The respondent contends that the amount deducted was only a portion of a debt and as such is not deductible as a bad debt ascertained to be worthless and charged off within the year, under section 234 (a) (5). If the premise of such contention is correct, the conclusion is sound, for the reason that a part of a debt may not be claimed as a bad debt deduction, under the Revenue Act of 1918. The petitioner was one of the four principal creditors of a debtor

involved in financial difficulties. One of the other creditors had secured an advantage by attaching the assets of the debtor. However, such advantage could not be maintained if the other creditors instituted bankruptcy proceedings. Accordingly, the attaching creditor entered into a written agreement with one of the other creditors, providing for a compromise with the debtor. These two creditors were in turn obliged to let the third creditor in on the agreement on a similar basis. This left only the petitioner to threaten the three-cornered agreement. After a full investigation, it was agreed that in no event could the creditors recover more than 25 per cent of the amounts due them. The petitioner thereupon entered into an oral composition agreement by which the creditors agreed to accept 25 per cent of the obligations due them in full settlement. By reason of the failure to take care of certain formalities, the petitioner was not entitled to share in the bankruptcy liquidation proceedings subsequently carried out. However, it was bound by the composition contract entered into in the taxable year in question, and in no event could it have recovered more than 25 per cent of its account with the debtor.

When the petitioner became a party to the composition agreement, it was agreed to accept 25 per cent in lieu of 100 per cent of the debt. In other words, it expressed its willingness to give up all possibility of recovering all, to increase the probability of recovering a part. The 75 per cent of the original obligation, at the time it was charged off, did not represent a portion of a debt, but was more in the nature of a loss. Thereafter, the amount continued on petitioner's books, did not represent a fractional part of a debt. It represented the total to which the petitioner was entitled. In the following year, 1921, the debtor only owed the petitioner 25 per cent of the original debt. The remainder was no longer in existence and could not have been claimed as a bad debt deduction in such later year. That is, in 1920, the debt was reduced from 100 per cent, or $13,011.93, to 25 per cent, or $3,253.

The composition agreement was similar to a compromise agreement, in that it reduced the total amount of the obligation. We have held that the amount by which a debt was reduced in compromise, was a deductible loss in the year in which such an agreement was made, *Appeal of Russel Wheel & Foundry Co.*, 3 B. T. A. 1168; *Appeal of Manville Jenckes Co.*, 4 B. T. A. 765. We think the principle applied in those cases is applicable here. The deduction of 75 per cent of the original debt in 1920 was proper, as it represented a loss sustained during that year, within the meaning of section 234 (a) (4) of the Revenue Act of 1918.

*Judgment will be entered on 15 days' notice, under Rule 50.*