*Judgment will be entered for the petitioner.*

ED FOSTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SEFFIE FOSTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 22753, 22754. Promulgated May 15, 1930.

*Don T. Haynes, Esq.*, for the petitioners.
*J. Arthur Adams, Esq.*, and *R. B. Cannon, Esq.*, for the respondent.

OPINION.

MARQUETTE: The first question to be considered is whether the Greene and Waggoner note for $27,500 given and maturing in 1920, but not paid until a subsequent year, constituted taxable income for 1920. The note was given to the partnership of Foster & Allen in which firm the present petitioners, as a community, owned a one-half interest.

The petitioners conducted their business and made their income-tax returns upon a cash receipts and disbursements basis. It is their

contention that as they received no proceeds from the note during 1920, they are not taxable with respect thereto. The respondent takes the position that the note was worth its face value in 1920 and therefore it constituted taxable income.

Section 213 (a) of the Revenue Act of 1918 provides:

That * * * "gross income" includes gains, profits, and income * * * of whatever kind and in whatever form paid * * *.

Section 202 (b) of the same act provides:

When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any, * * *

The note in question was property received in exchange for other property within the meaning of the above statute, and it is to be treated as though it were cash "to the amount of its fair market value, if any." What, then, was the fair market value of the note? The evidence discloses that the holder of the note, as soon as it was received, tried repeatedly to sell it to banks and moneyed men in the locality, but could not obtain a purchaser. This appears to have been due to the fact that the makers of the notes were extensively engaged in speculative enterprise, and to the further fact that the banks were already carrying large amounts of other notes given by these same makers. Whether the note might have found a ready market at another time, under different conditions, it is unnecessary for us to decide. We are here considering a situation that arose, and conditions that existed, in 1920. It is sufficient that at that time and under those conditions the note was not salable to the banks and other purchasers of securities with whom the petitioner was in a position to deal and to whom the note was offered for purchase. *Miami Beach Improvement Co.*, 14 B. T. A. 10. We are satisfied that within the meaning of the statute the note had no fair market value in 1920. And this conclusion is not affected by the probability that the amount of the note might have been collected, after maturity, by means of a lawsuit against one of the makers, for, as we interpret the statute, the "fair market value" of property at any given time is not to be based upon and fixed by the probable outcome, at some future time, of more or less lengthy legal proceedings. In our opinion the note in question did not constitute income for the year 1920 and should not have been so treated by the respondent.

The second issue here presented is whether the $21,000 paid by Foster & Allen for a 4-acre lease which they to the Bowers Oil Co. in order to prevent confusion of titles and consequently a probable loss to the firm, was deductible as an ordinary and necessary business expense. The respondent contends that it was a capital investment, and not deductible.

We agree with that contention. When the transaction was made the firm of Foster & Allen had already contracted to sell $30,000 worth of leases, and were obligated for brokers' commissions upon those sales. The Bowers Co. had unwittingly drilled a producing oil well beyond the boundaries of its lease. Foster alone knew of the error, and before it became generally known his firm bought and assigned to the Bowers Co. the acreage necessary to complete that company's title. This was done solely for business reasons, to prevent confusion as to the lease. titles and thereby to protect Foster & Allen's titles in and to other leaseholds, and, in consequence, to protect them against loss in respect to contracts for the sale of those leaseholds. Such expenditures are properly to be capitalized. See *West End Consolidated Mining Co.*, 3 B. T. A. 128; *Consolidated Mutual Oil Co.*, 2 B. T. A. 1067; *D. N. & E. Walter & Co.*, 4 B. T. A. 142; *Lincoln L. McCandless*, 5 B. T. A. 1114; and *C. M. Nusbaum*, 10 B. T. A. 664.

*Judgment will be entered under Rule 50.*