GEORGE W. WETHERBEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. GEORGE W. WETHERBEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ABEL BLISS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. ABEL BLISS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38813–38815, 38238.   Promulgated June 12, 1930.

*S. P. Cousin, Esq.*, for the petitioners.
*John D. Foley, Esq.*, for the respondent.

**OPINION.**

TRAMMELL: The issue raised by the petitioners in these proceedings is whether they are entitled to deduct as ordinary and necessary business expenses certain expenditures made by them in the taxable years as a result of litigation involving the title of lands in the State of Louisiana.

In 1923, pursuant to final judgment of the Supreme Court of Louisiana, the petitioners paid R. O. Roy the sum of $28,315.39 representing the cost to said Roy of drilling 10 oil wells on the petitioner's lands. In the same year the petitioners paid to their attorneys $22,071.50 for services in connection with the litigation, and $73.75 court costs. In 1924 the petitioners paid to their attorneys additional fees in the amount of $10,250. These amounts were claimed by the petitioners as expense deductions in the partnership

returns of income. The respondent disallowed the deductions, holding that the amounts in question constituted capital expenditures.

The petitioners instituted the litigation against Roy for the purpose of establishing their title to the mineral rights in the lands. They were in effect defending their title against the claims asserted by Roy. Expenses incurred in such litigation are capital expenditures, and are not deductible as ordinary and necessary business expenses. *West End Consolidated Mining Co.*, 3 B. T. A. 128; *L. L. McCandless*, 5 B. T. A. 1114; *Phoenix Development Co.*, 13 B. T. A. 414; *Murphy Oil Co.*, 15 B. T. A. 1195.

Under the principles laid down in the foregoing decisions, the amounts expended by the petitioners herein for attorneys' fees and court costs clearly come within the category of capital expenditures. Accordingly, the respondent's determination as to these items is approved.

The respondent has also determined that the item of $28,315.39 was a capital expenditure. This amount was paid by the petitioners pursuant to the court's judgment requiring them to reimburse Roy for the cost of drilling the 10 oil wells on their lands, of which 7 were dry wells and 3 were producers. The petitioners allege that the said amount included machinery to the value of $8,264.83, and contend that the balance of $20,050.56 is deductible as an ordinary and necessary business expense. The petitioners further contend in the alternative that, if the said amount so paid to Roy is not deductible as expense, that portion thereof which represents the cost of drilling the 7 dry wells is deductible as a loss sustained in 1923.

The Supreme Court of Louisiana appears to have regarded the sum of $28,315.39 as representing the cost of developing the oil field on the petitioner's property, which resulted in the bringing in of three producing oil wells. In its opinion (97 So. 40), the court said:

> Plaintiffs complain of the judgment in reconvention for the expenses and expenditures of defendants in developing the oil field upon the property. We are convinced from all the circumstances that a failure to make this allowance would, in effect, permit the plaintiffs to enrich themselves at the expense of the defendants; that equity, fair dealing, and law require that they should make the reimbursement, especially since they stood by and permitted the defendants to make the outlay and incur the expense for their benefit without protest, or at least without resorting to proper legal remedies until oil had been discovered.

We are constrained to take the same view. The petitioners were required by the court to reimburse Roy for his drilling expenses because of the fact that as a result of the court's judgment the petitioners would acquire the benefits flowing from the drilling operations which resulted in the three producing oil wells. Other-

wise, the petitioners would, to the extent of the development of the oil field, have enriched themselves at the expense of Roy. The drilling operations and the discovery of oil increased the value of the land. On account of the enrichment as the result thereof the petitioners were required to pay not only the cost attributable to the producing wells, but the entire expenditures of the drilling operations of which the petitioners received the benefit. The decree provided that the minerals belonged to the petitioners, but that they should reimburse Roy for these expenditures. In order to relieve or remove any claim, right or interest of Roy, this payment was required. Such payment may therefore be considered as a capital expenditure. There was no segregation of the expenses of the dry holes from the producing wells by the court. The decree made no distinction between the expenditures. The total expenditures for the drilling operations were required to be paid by the petitioners in order to secure to themselves the clear and unencumbered title to the mineral rights. The cost of drilling the dry holes may not therefore be separated from the cost of the producing wells and considered as expense or as a loss. They were all required to be paid in order to clear the title.

What the rule would be had the petitioners themselves drilled these wells, we need not consider, since a materially different state of facts is presented.

The deficiencies determined by the respondent are approved.

*Judgment will be entered for the respondent.*