JAMES SWEINHART, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54784.   Promulgated February 23, 1934.

*J. Lee Boothe, C.P.A.*, for the petitioner.
*Owen W. Swecker, Esq.*, for the respondent.

### OPINION.

ADAMS: This proceeding involves a deficiency of $235.79 in income tax for the calendar year 1928.   The issue presented is whether respondent erred in disallowing a deduction of $3,239.

The facts are stipulated substantially as follows:

The petitioner, during the year 1928, derived income from his employment as reporter on the staff of the Detroit News and also from the sale of capital stock. His principal income, however, was in the form of dividends on stock of domestic corporations.

The petitioner's return was made on the basis of actual cash receipts and disbursements.

On August 31, 1925, the petitioner purchased from Charles A. Fagg on a land contract Lot Seven of Highland View Addition to the Village of Birmingham, Michigan, for a consideration of $15,000.00. * * * The contract provided:

> * * * in consideration of the sum of Two Thousand Five Hundred ($2,500.00) Dollars paid to the Seller by the Purchaser prior to the delivery hereof, the receipt of which is hereby acknowledged, and the payment of the additional sum of Twelve Thousand Five Hundred ($12,500.00) Dollars by the Purchaser, together with interest on any part thereof at any time unpaid at the rate of six per cent per annum while the Purchaser is not in default, and at the rate of seven per cent per annum if the Purchaser is in default, while such default continues, payable monthly, all of which purchase money and interest shall be paid in installments of not less than One Hundred Twenty-Five ($125.00) Dollars per month payable October 1, 1925, and not less than the last named sum monthly thereafter; said payments to be applied (first upon interest and the balance on principal) : Provided, the entire purchase money and interest shall be fully paid within five years from the date hereof anything herein to the contrary notwithstanding.

> A further payment of Two Thousand Five Hundred ($2,500.00) Dollars is to be paid on the principal on or before May 1, 1926.

> Under the terms of the contract the petitioner had possession and use of the property but title was to remain in the vendor until such time as the full amount of the purchase price was paid.

> On or about November 1, 1925, the vendor placed a mortgage on the said property in the amount of $6,500.00

By June 8, 1926 the petitioner had paid $7,713.43 on the principal amount of the contract, leaving an unpaid balance of $7,286.57. On this day the petitioner gave the vendor a check for $6,500.00 with the request that the funds be used to pay off the existing mortgage. This payment was duly entered, on the land contract, as a payment on the principal amount of the contract, which left an unpaid balance of $786.57. No further principal payments were made by the petitioners to reduce the balance of $786.57. The vendor did not pay off the mortgage in accordance with the verbal request of the petitioner.

On November 30, 1927 the vendor committed suicide by taking poison. The mortgagee and the petitioner immediately filed claims, in the amount of $6,500.00, against the estate of the deceased. After providing for a widow's allowance, the net estate of $1,279.65 was given to the mortgagee as a part payment on the mortgage. At about the same time a further payment of $1,170.00 was made the mortgagee from sources unknown, which payment reduced the mortgage to $4,050.35.

On October 28, 1928 the Probate Court ordered and decreed that the property should be conveyed to the petitioner, subject, however, to the unpaid encumbrance of $4,050.35. To this the petitioner agreed and received the title to the property.

The land contract is included herein by reference. It carried the following provisions in addition to those hereinabove set forth:

*It is Mutually Agreed:* That the Seller may at any time encumber said land by mortgage or mortgages to secure not more than the balance owing hereon at the time such mortgage is executed nor more than fifty per cent of the purchase money paid and to be paid under this contract, which mortgage or mortgages shall be payable in not less than three nor more than five years with interest at the rates prevailing at the time of execution and may provide for payments of not more than five per cent of the principal semi-annually and shall be a first lien upon the land superior to the rights of the purchaser therein provided notice of the execution of such mortgage containing the name and address of the mortgagee or his agent, the amount of such mortgage, the rate of interest and maturity of principal and interest shall be sent to the Purchaser by registered mail promptly after execution thereof and the Purchaser will on demand execute any instrument demanded of the Seller reasonably necessary or requisite to execute or confirm the execution of the foregoing power.

\* \* \* \* \* \* \*

That if the title of the Seller is evidenced by land contract or now or hereafter encumbered by mortgage, the Seller shall meet the payments of principal and interest thereon as they mature and produce evidence thereof to the Purchaser on demand and in default the Purchaser may pay the same, which payments shall be credited on the sums matured or first maturing hereon with interest at seven per cent per annum and in event proceedings are commenced to recover possession or enforce the payment of such contract or mortgage because of the Seller's default the Purchaser may at any time thereafter while such proceedings are pending encumber said land by mortgage securing such sum as can be obtained upon such terms as may be required and with the proceeds pay and discharge such mortgage or purchase money lien, and any mortgage so given shall be a first lien upon the land superior to the rights of the Seller therein and thereafter the Purchaser shall pay the principal and interest on such mortgage so given as they mature, which payments shall

be credited on the sums matured or first maturing hereon, and when the sum owing hereon is reduced to the amount owing upon such contract or mortgage or owing to any mortgage executed under either of the powers in this contract contained, a conveyance shall be made in the form above provided with a covenant by the grantee to assume and pay the same.

The petitioner contends that from the nature of the loss it might be regarded either as an embezzlement or a bad debt. He urges that, since the payment of $6,500 in 1926 reduced his indebtedness to Fagg to only $786.57, Fagg was under a legal obligation to apply the payment against his indebtedness to the insurance company which was secured by a mortgage on the land sold, and his failure to so apply it upon request of the petitioner constituted an embezzlement of the funds.

Embezzlement may be defined as a fraudulent appropriation of another's property by a person to whom it has been entrusted, or into whose hands it has lawfully come. At the time of the payment petitioner owed a balance in excess of $6,500 on the purchase price of the property. The funds received by Fagg were, therefore, lawfully due him; they became his and subject to his control. In our opinion his use of them for his own purposes did not constitute embezzlement. Under the terms of his contract he may have been under an obligation to petitioner to reduce the mortgage to an amount within the balance due him on the contract of purchase and sale, but this obligation, if it existed, was at most contractual.

The respondent contends that the additional sum of $3,239 was expended for the purpose of acquiring and protecting title to the property in question, and as such represented capital expenditures. We do not think the case is as simple as that. In order to determine whether an expenditure is deductible in computing net income, it is important not only to consider its purpose, but its character, the reasons for making it and any other facts material to its classification as a deductible item under the applicable sections of the revenue law.[1] A proper classification can not be based upon an isolated fact; the whole transaction with all relevant facts must be considered.

---

[1] [SEC. 23, Revenue Act of 1928.] In computing net income there shall be allowed as deductions:

* * * * * * *

(e) *Losses by individuals.*—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or

(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft.

* * * * * * *

(j) *Bad debts.*—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

* * * * * * *

The petitioner contracted with the deceased vendor for conveyance of certain lands for a consideration of $15,000, with certain conditions as to method and time of payment, the vendor to retain title until the payments were all made and then to convey the property to petitioner free from all encumbrances due to his acts and deliver a warranty deed. The parties started on the performance of this contract, and shortly thereafter the vendor encumbered the property with a mortgage of $6,500. On June 8, 1926, petitioner had paid upon the contract all that he would have to pay except the sum of $786.57. The vendor died in November 1927 without having performed his contract, which was not due until the entire purchase price should be paid. This obligation survived against his estate and the contract obligation of the petitioner to the estate still existed. The estate was unable to perform, due to its insolvency and the fact that the vendor failed to apply against the mortgage the $6,500, or a portion of it sufficient to bring the mortgage within the balance due him on the purchase price. The extent of its ability to perform was to make a conveyance subject to the mortgage of $4,050.35.

Under order of the Probate Court on October 28, 1928, it was ordered and decreed that the property be conveyed to petitioner, subject to the unpaid encumbrance. In taking title to the property, the petitioner did not repudiate the contract, nor did he agree to any novation. He simply accepted such performance as a performance *pro tanto* of the obligations of the vendor. The decree of the court was a final settlement of anything and all things the estate is able to do towards performing its obligation. As a result of this settlement the property was transferred to petitioner, subject to the mortgage in the amount of $4,050.35. The difference between that amount and the balance due from petitioner on the purchase price represented an overpayment which petitioner had made on the property and became an obligation owing to him by the vendor's estate, which, had the estate been solvent, he could have collected. In fact, had the estate been solvent the court would have provided for such settlement in its order and decree of specific performance of the contract by the executor. The estate being insolvent, petitioner sustained a loss in the amount of the debt at the time of the settlement under the court's decree. This was in 1928, and is deductible in computing petitioner's net income for that year. To say that this amount should be considered as an additional investment in the property is to close our eyes to the facts and legal consequences of the acts of the parties and fail to recognize the obligations arising from their contractual relation-

ship. This we may not do. We are of the opinion that the additional expenditure here was not, in any proper sense, a part of the cost of the land. Cf. *Leichner & Jordan Co.*, 4 B.T.A. 133; *Lena G. Hill*, 8 B.T.A. 1159; *Pacific Novelty Co.*, 5 B.T.A. 1017; *Kay Wood*, 11 B.T.A. 740.

The cases cited by respondent may be distinguished from this on their facts, and are not controlling here. This is not a case of an expenditure to acquire title, as was the case in the *Ravlin Corp.*, 19 B.T.A. 1112, cited by the respondent, nor an expenditure to defend title, as in *North American Oil Consolidated*, 12 B.T.A. 68; *Chestnut Farms Dairy, Inc.*, 19 B.T.A. 192; *Ida Wolf Schick*, 22 B.T.A. 1067; nor an expenditure for the purchase of a lease, as in *Ed Foster*, 19 B.T.A. 958; nor the cost of additional assets, as in *George W. Wetherbee*, 20 B.T.A. 35. This is a case of a contract of purchase and sale where the seller obligated himself to deliver the property upon payment of the price, free from all encumbrances due to his own acts, and to give a warranty deed. Failing in this, he, his successors, or assigns became indebted to the purchaser in an amount equal to the resulting overpayment. The loss was sustained upon this indebtedness.

Reviewed by the Board.

*Decision will be entered for the petitioner.*