LENOX CLOTHES SHOPS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101943. Promulgated December 30, 1941.

*Don M. Harlan, Esq.*, and *T. S. Forward, C. P. A.*, for the petitioner.

*Philip M. Clark, Esq.*, for the respondent.

### OPINION.

SMITH: This is a proceeding for the redetermination of deficiencies in income and excess profits tax for the calendar years 1936 and 1937 as follows:

| Year | Income tax | Excess profits tax |
|------|------------|--------------------|
| 1936 | $4,510.68 | $255.75 |
| 1937 | 6,622.66 | 1,106.98 |

The questions in issue are:

(1) Whether the petitioner is entitled to file income tax returns for 1936 and 1937 on the installment basis.

(2) Whether the respondent erred in adding to the petitioner's net incomes reported for 1936 and 1937:

| | 1936 | 1937 |
|--|------|------|
| Accrued income | $15,809.88 | $5,122.61 |
| Discounts earned | 795.30 | 46.17 |

Whether the respondent erred in disallowing the deduction from gross income of 1937 of:

| | |
|--|--|
| Shrinkage in inventory | $6,741.31 |
| Officers' salaries | 4,500.00 |
| Bad debts | 4,347.97 |

For convenience of treatment the several issues will be discussed separately.

*Installment Basis.*

The petitioner is a Michigan corporation which was organized on March 1, 1936. It filed its income tax returns for 1936 and 1937 with the collector of internal revenue at Detroit.

The Kelly Furniture Sales Co. is a Michigan corporation with its principal place of business in Detroit. It sells furniture and other merchandise on the installment basis and for many years has made its returns upon the installment basis. In 1935 it opened a clothing department for the sale of women's ready-to-wear. It began by selling for cash only. It found, however, that its patrons demanded credit upon sales of articles of clothing the same as they were given credit in purchasing furniture and other merchandise from the company. In order to get trade the company was forced to make sales of women's ready-to-wear upon the installment basis. All of the installment sales were made under title-retaining contracts. About the beginning of 1936 the company decided to expand its clothing department and sell men's clothing as well as women's ready-to-wear. It was further decided that it would be desirable to conduct the clothing department through a separate corporation.

Petitioner was organized on or about March 1, 1936, for the purpose of taking over the clothing department of the Kelly Furniture Sales Co. It acquired from that company its inventory of women's wearing apparel and also installment accounts receivable in the amount of $2,693.66. It then acquired additional merchandise, including men's clothing. It continued to make sales upon the installment basis the same as had been done by the former owner. During the years 1936 and 1937 from 85 to 90 percent of its sales were made on the installment basis. Each customer desiring to buy upon such basis signed a conditional sales agreement under which it was declared that title to the merchandise remained in the petitioner until fully paid for. The installment contracts generally provided that payments could be made over a period of from three months to one year. In some cases the installment payment period was less than three months and in a few cases, such as sales of fur coats, the credit period was for more than one year.

Articles of clothing sold on the installment basis were seldom repossessed by the petitioner. During its entire operations to date it has taken back under its title-retaining contracts only two fur coats.

The petitioner kept a card record of each article of clothing in stock. Upon this card was shown the cost of the article. Then, when a sale was made, the card showed the price at which the article was sold.

The petitioner kept its books of account in such a manner as to show the gross profit realized from its collections on installment contracts.

It filed income tax returns for 1936 and 1937 upon the installment basis. It included in its gross profit the allocable part of the total profit which was received upon the installment collections made during each taxable year. That amount was shown, together with profits on cash sales, as its gross income. From such gross income it deducted salaries and other expenses which a taxpayer making its returns upon the installment basis is entitled to deduct.

In his deficiency notice the respondent stated:

On your return you reported income on the installment basis.

It is found that the greater part of your sales are made on an extension of credit basis for from 2½ weeks to 3 months, and therefore you do not qualify to report income upon the installment sales basis. It is also found that reporting income upon the installment sales basis does not truly reflect income for the years 1936 and 1937. Your income for said years has been computed on the accrual basis, in accordance with Section 31 of the Revenue Act of 1936 and the regulations promulgated thereunder.

Inasmuch as your method of reporting income has been changed from the installment sales basis to the accrual basis the balance of deferred income at December 31, 1936 in the amount of $15,809.88 is restored to income.

The deficiency notice shows the method by which the respondent determined the net income of the petitioner for each of the years 1936 and 1937 as follows:

### 1936

#### ADJUSTMENTS TO NET INCOME

| | | |
|---|---:|---:|
| Net income as disclosed by return | | $1,238.16 |
| Unallowable Deductions and Additional Income: | | |
| (a) Bad debts | $1,419.13 | |
| (b) Accrued income | 15,809.88 | |
| (c) Discounts earned | 795.30 | 18,024.31 |
| Net income as adjusted | | $19,262.47 |

### 1937

#### ADJUSTMENTS TO NET INCOME

| | | |
|---|---:|---:|
| Net income as disclosed by return | | $6,118.30 |
| Unallowable Deductions and Additional Income: | | |
| (a) Accrued income | $5,122.61 | |
| (b) Inventory | 6,741.31 | |
| (c) Discounts | 46.17 | |
| (d) Advertising | 1,458.60 | |
| (e) Interest | 196.79 | |
| (f) Michigan Sales tax | 48.66 | |
| (g) Overstatement deductions | .60 | |
| (h) Officers salaries | 4,500.00 | |
| (i) Bad debts | 4,347.97 | 22,462.71 |
| Total | | $28,581.01 |

Nontaxable Income and Additional Deductions:
- (j) Unemployment insurance tax_____ 51. 87
- (k) Capital stock tax_____ 22. 96    74. 83

   Net income as adjusted_____ $28, 506. 18

It will be noted that the respondent found in his deficiency notice that the greater part of the petitioner's sales are made on an extension of credit basis for from two and one-half weeks to three months and that "therefore you do not qualify to report income upon the installment sales basis." On brief the respondent contends that the evidence does not show that the extension of credit basis was for a longer period. We think, however, that it does. The president of the petitioner testified that the usual term of credit was for a period of from three months to one year. The accounts receivable at the start of business on March 1, 1936, were in the amount of $2,693.66. At December 31, 1936, they were in the amount of $32,248.69, and at December 31, 1937, $49,121.64. The credit sales for 1937 were in the amount of $122,902.56. It would appear from the above facts and other facts contained in the record that the installment sales were generally for a period exceeding three months.

Section 41 of the Revenue Act of 1936 provides in part as follows:

SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but * * * if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

Section 44 of the same act provides in part:

SEC. 44. INSTALLMENT BASIS.

(a) DEALERS IN PERSONAL PROPERTY.—Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

The respondent contends that he has authority to deny to a taxpayer the installment basis of reporting in case he determines that the net income can not be correctly reflected by such basis; that, since he has found in his deficiency notice that "reporting income upon the installment sales basis does not truly reflect income of the years 1936 and 1937", he is authorized to reject such basis of reporting. He has therefore attempted to put the petitioner upon the accrual basis.

The petitioner is a dealer in personal property "who regularly sells or otherwise disposes of personal property on the installment plan."

Under section 44 of the Revenue Act of 1936 the petitioner is entitled to make its returns upon the installment basis, provided they correctly reflect its net income. We are satisfied that they do. We have not here the complicated situation which was considered by the Board in *Blum's, Inc.*, 7 B. T. A. 737. There a corporation had for many years been making its returns upon the accrual basis. It changed its method of reporting from the accrual basis to the installment basis in 1918 or 1919, but continued to accrue its expenses. We held that it was entitled to make such change.

The situation in the instant proceeding is much simpler. The petitioner began using the installment basis of reporting from the beginning of its business operations on March 1, 1936. In each of its returns for 1936 and 1937 it has reported as its gross income the profit included in its collections of installment sales during each year, and has made permissible deductions therefrom. This is in accordance with the Commissioner's regulations. It made some errors in the reporting, but we are satisfied that these errors can easily be corrected.

The fact that the petitioner sells ready-to-wear clothing on the installment basis rather than pianos or furniture or other personal property is not material. *Blum's, Inc., supra,* likewise sold men's and women's ready-to-wear upon the installment basis. To be sure, the clothing department was only one of the departments of that business, but we did not exclude the clothing department from the installment basis of reporting income.

We consider first the adjustment made by the respondent by adding to the net incomes reported for 1936 $15,809.88 and for 1937 $5,122.61 as "accrued income." These amounts represented for 1936 the estimated profit to be realized upon the accounts receivable at December 31, 1936, shown in the balance sheet as "deferred income", and for 1937 the increase in such "deferred income." Under the installment basis of reporting the petitioner is not required to account for such profit until the accounts receivable have been collected. The action of the respondent in adding these amounts to the petitioner's reported net incomes for 1936 and 1937 is reversed.

The respondent also added to the petitioner's gross incomes for 1936 and 1937 $795.30 and $46.17, respectively, for "discounts earned." These amounts represent the petitioner's gross profit on collections during 1936 and 1937 of installment accounts receivable taken over from the Kelly Furniture Sales Co. at March 1, 1936, of $2,693.66. But these amounts have already been included in the net incomes reported by the petitioner in its returns. The addition of these amounts is clearly a duplication regardless of whether the returns should be made on the installment basis or upon the accrual basis. The respondent does not contend otherwise in his brief. The action of the respondent upon this point is reversed.

## Shrinkage in Inventory.

In its return for 1937 the petitioner deducted from gross income a reduction in the inventory made at the end of the year of $6,741.31. In its income tax return for 1936 the following instruction and answer appears:

> 6. State whether the inventories at the beginning and end of the taxable year were valued at cost, or cost or market, whichever is lower. If other basis was used, describe fully, state why used and the date inventory was last reconciled with stock.
>
> [Answer] Cost.

It is the contention of the respondent herein that, inasmuch as inventories were not used by the petitioner in the computation of its net incomes for 1936 and 1937, and inasmuch as they are not necessary in the determination of the net incomes for either year, and since the petitioner in its return for 1936 elected to report its inventories on the cost basis, it may not change the basis of taking inventories for a subsequent year without the permission of the Commissioner, which clearly was not obtained in this case. It is the petitioner's contention, on the other hand, that it did not intend to exercise an election by the answer which it made to the question propounded in the 1936 return. The testimony of the president is to the effect that the answer to the question made on the 1936 return was merely for the purpose of stating a fact; that the prices of merchandise did not decrease during the year 1936 and that therefore there was no occasion for taking its inventories at December 31, 1936, at less than cost. The petitioner further submits that at the close of 1937 there was a decline in prices for merchandise, that such decline amounted on the average to at least 15 percent of the merchandise, and that for 1937 it was entitled to reprice its inventory at the close of 1937 so as to show an average decline in the value of its inventory of at least 15 percent.

We sustain the contention of the respondent upon this point. We think that the petitioner did elect to take its inventory in 1936 on the basis of "cost" rather than on the basis of "cost or market, whichever is lower." The petitioner may not under the regulations of the Commissioner change its basis without first having obtained permission of the Commissioner for such a change.

It is further to be noted that the profits for 1937 were computed upon the basis of cost of merchandise sold. In its return for 1937 the petitioner seeks to reduce its profit upon the collections of 1937 by an assumed loss which will result from sales in the future. We are of the opinion that in the circumstances of the case the petitioner is not entitled to the claimed deduction of the $6,741.31 in question.

## Officers' Salaries.

The next question for consideration is whether the petitioner is entitled to deduct from the gross income of 1937 $4,500 representing the part of the salary which the petitioner owed its president, Charles R. Murphy, for that year. The salary credited to Murphy's account for 1937 was $6,000. During 1937 the petitioner paid Murphy only $1,500, the balance of $4,500 was shown on the petitioner's books of account at December 31, 1937, as an account payable. On March 1, 1938, the petitioner gave Murphy a promissory note in the amount of $4,500. Thereafter petitioner's books of account showed a note payable to Murphy of $4,500 instead of an account payable. The note payable was satisfied on July 1, 1938, through the petitioner's issuance to Murphy of $4,500 par value of its stock, which was accepted by Murphy as the equivalent of $4,500 cash. The petitioner claims the right to deduct from its gross income for 1937 the $4,500 in question.

The reason given by the respondent in his deficiency notice for the disallowance of the $4,500 is as follows:

Included in the deductions claimed on your return for the year 1937 is accrued salary of C. R. Murphy and S. B. Murphy, his wife, in amount of $4,500.00 which was not paid during 1937 or during the first two and one-half months of 1938.

It appears that the accrual of $4,500.00 additional officers' salaries for 1937 was merely a tentative entry and therefore said amount does not constitute an allowable deduction from gross income within the purview of Article 22 (a)-3, Regulations 94.

Article 22 (a)-3 of Regulations 94, referred to by the respondent in his deficiency notice, provides, so far as material: "If the services were rendered at a stipulated price, in the absence of evidence to the contrary such price would be presumed to be the fair value of the compensation received."

The evidence relative to the deduction of the $4,500 salary which was disallowed by the respondent is most unsatisfactory. At the hearing of this proceeding the petitioner's president, as a witness, was asked the question:

Q Was there any agreement between the corporation and yourself as to the amount of salary you were to receive for 1937?

A Not on the records, no.

Q You were paid, apparently according to the record here, $1,500 compensation in 1937. How was that paid, at the rate of $125 a month?

A I can't tell you that. It was credited to my account. The books will show that.

The respondent does not question the reasonableness of an allowance of $6,000 as compensation for the petitioner's president for 1937. The respondent claims that the $4,500 is not an allowable

deduction under section 301 of the Revenue Act of 1937 because it was not paid within 2½ months after the close of the calendar year 1937. This would clearly be a sufficient ground for the disallowance of the claimed deduction provided Murphy or his family owned 50 percent or more of the capital stock of the petitioner. The evidence does not show whether he owned 50 percent or more or less of the stock. The petitioner's claim for the deduction of the $4,500 in question must be denied for lack of evidence.

### Bad Debts.

The final point in issue is whether the petitioner is entitled to deduct from gross income for 1937 bad debts in the amount of $4,347.97. We have recognized in *Blum's, Inc.*, *supra*, that a taxpayer making its returns on the installment basis is entitled to deduct bad debts from gross income, but only in the amount that the bad debt charged off represents the unrecovered cost of the merchandise included in the charge-off. The only reason given by the respondent in his deficiency notice for the disallowance of the bad debt deduction was "due to your failure to establish what amounts are allowable as bad debt charge-offs during the taxable year."

The evidence plainly shows uncollectible installment accounts determined as worthless and charged off by the petitioner in 1937 in the amount of $4,347.97. The charge-off was made on the card records kept by the petitioner. Many of the accounts had been turned over to an attorney for collection. After much investigation it was found that a number of installment debtors who had not made any payments on their accounts for many months had moved from the city or could not be located. It further appears that the total amount of $4,347.97 of these bad debt accounts was charged off by journal entries.

In the compilation of the petitioner's tax return for 1937 the accounts charged off were treated as collected. In other words, the profit to be reported in those accounts was returned as a part of petitioner's gross income for 1937. This was in error. The petitioner was not required to include in its gross income the profit element in these bad debt charge-offs. That the petitioner had done so, however, is apparent from the following statement:

| | |
|---|---|
| Installment accounts receivable 1/1/37 | $32,248.09 |
| Installment sales 1937 | 122,902.56 |
| | 155,151.25 |
| Installments collected 1937 | 106,029.61 |
| Accounts receivable 12/31/37 | 49,121.64 |

The balance sheet at December 31, 1937, after the charge-offs were made, shows accounts receivable $49,121.64. It is thus apparent that

1130

the $4,347.97 bad debt charged off is included in the $106,029.61 of collections as the petitioner contends and as the petitioner's president testified.

As we have indicated above, we held in *Blum's, Inc., supra*, that the taxpayer was entitled to charge off as a bad debt only the unrecovered cost of the merchandise represented by the bad debts. The result of including in the petitioner's collections for 1937 the bad debts charged off in the amount of $4,347.97 was to report in the gross income the element of profit in such uncollected accounts. The gross income is subject to adjustment to eliminate such profit. The petitioner is entitled to deduct as a bad debt the unrecovered cost included in the $4,347.97. Since the petitioner is entitled to a reduction of the gross income to the extent of the profit and to a deduction of the unrecovered cost as a bad debt, the result thus obtained is the same as was obtained by the treatment accorded to the transaction by the petitioner.

Accordingly, the action of the respondent in disallowing the exclusion from gross income of the profit and the deduction of the bad debt is reversed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

TYSON and KERN concur only in the result.

MELLOTT dissents.