Bertha Kirkpatrick v. Commissioner.
Kirkpatrick v. Commissioner
Docket No. 3866.
United States Tax Court
1944 Tax Ct. Memo LEXIS 8; 3 T.C.M. (CCH) 1312; T.C.M. (RIA) 44403; December 15, 1944
*8 Harry A. Hall, Esq., 1214 Temple Bldg., Kansas City, Mo., for the petitioner. Roy C. Hormberg, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: The petition herein was filed for the purpose of redetermining a deficiency in income tax for the calendar year 1940 in the amount of $7,148.88, together with a 5 per cent penalty in the amount of $357.44. The Commissioner adjusted the petitioner's net income by adding thereto (a) additional business income in the amount of $969.48, and (b) additional income from rents in the amount of $712.85. Neither of these adjustments has been assigned as error by the petitioner. Effect will be given to them in decision to be entered under Rule 50. The Commissioner also adjusted the petitioner's net income by adding thereto the sum of $32,911.16, stating in his deficiency notice that this adjustment represented "compensation received from the estate of William A. DeLong for services rendered." This sum included "Real estate, Lots 1, 2, 3, 4, 5 and 6, Block 3, Ridge Heights, Kansas City, Mo.," valued at $10,000. The assignment of this adjustment as error by petitioner is the only issue raised by the pleadings, namely, whether the petitioner *9 is entitled to the relief afforded by section 107 of the Internal Revenue Code in computing her income tax liability for 1940. Except for the testimony of the petitioner, the facts are all stipulated. This stipulation of facts, together with the exhibits attached thereto, is incorporated herein by reference, and made a part hereof. The following summary of these stipulated facts includes other findings of fact based upon petitioner's testimony. [The Facts] Petitioner is an individual residing at 2741 Benton Boulevard, Kansas City, Mo. She was employed by W. A. DeLong, doing business as the DeLong Coal Company, as a bookkeeper, in May, 1921, at a salary of $100 per month, and at that time DeLong made no mention of any services other than those of a bookkeeper. She continued to be the company's bookkeeper and received the same salary of $100 a month for those services until DeLong's death, on March 5, 1939. DeLong was a retail coal dealer. The volume of his business from 1921 to 1939 was rather uniform. He handled about 150 to 200 cars of coal annually and had about 300 to 350 customers to whom he delivered coal each year. The volume of petitioner's work as bookkeeper did not *10 vary substantially over the period from 1921 to 1939. As bookkeeper, petitioner took care of charges and credits, figured the freight bills, wrote checks, handled the coal billing, and kept DeLong Coal Company's books and records which consisted only of a ledger and cash book. Prior to 1921, the petitioner had her own insurance business and kept her own books in connection therewith. She had taken a bookkeeping and shorthand and typewriting course and was able to and did take care of the records of the DeLong Coal Company without assistance from anyone. The salary of $100 monthly was paid to the petitioner solely for her services as bookkeeper. When petitioner went to work for DeLong in May 1921, the latter's health was in a very poor condition. He suffered from high blood pressure, heart trouble, dropsy, epilepsy, and kidney and liver ailments. In June 1921, DeLong had a breakdown, due in part to heavy drinking. At DeLong's request, the petitioner arranged for him to go to a sanitarium, and accompanied him there. He remained there for five or six days. Although DeLong later did very little drinking, the condition of his health was such that he was subject to frequent, sudden, and *11 unexpected fainting and sinking spells, under which he often became unconscious. He was single and had no family, and needed constant attendance, special diet and nursing services. Petitioner had known DeLong for approximately three years prior to May 1921, having been one of his customers; but, although she knew he was not well, she did not know how ill he was when she went to work for him. Petitioner had had two years experience in a hospital and had done practical nursing prior to May 1921. DeLong requested the petitioner, in June 1921, to perform various nursing and personal services for him. These services consisted generally of buying and preparing the food for all his meals, driving his car, buying and mending his clothes, sending out his laundry, supervising the thorough cleaning of his home twice a year and at times helping with the daily cleaning, assisting him in the management of his financial affairs and attending to him personally, whenever he suffered a breakdown from epilepsy as a result of which he would be temporarily totally disabled. Petitioner lived several blocks away from DeLong with her mother and brother, but was constantly on call by DeLong. DeLong's condition, *12 critical in 1921, became gradually worse. In later years, she was with him for weeks at a time, as he had become almost totally disabled. She ate her meals, except breakfast, with him. In the early years, he had an average of five or six epileptic fits weekly. Even though they decreased in number and intensity in later years, his health generally got poorer in other ways and he became more helpless every year, necessitating more constant attention by petitioner. At times petitioner had to take time off from her bookkeeping to take care of him and would have to work at night to keep her books up to date. About June 1921, DeLong orally promised to pay the petitioner for these special services, and between 1921 and 1926 they had numerous conversations regarding the amount, form and time of payment thereof. About 1922, they had a written agreement whereby DeLong agreed that his estate would pay the petitioner $50,000 when he died. That agreement was destroyed about the time that the petitioner and DeLong entered into a written contract dated July 23, 1936, which provided in part as follows: "WHEREAS, the undersigned, Bertha Kirkpatrick, of Kansas City, Missouri, has been in the employ *13 of the undersigned, W. A. DeLong, also of Kansas City, Missoudi, for more than fourteen years in the beginning as secretary of said W. A. DeLong in his mercantile business, at a nominal salary, and by reason of the ill health and impaired physical condition of the said DeLong, the said Bertha Kirkpatrick later became and ever since has continually been and acted as the business manager and advisor of said DeLong and has continually cared for and rendered efficient and valuable services in caring for the physical condition of the said DeLong and is now continuing to do so, and * * * * * "1. In consideration of said services rendered by said Bertha Kirkpatrick to and for said W. A. DeLong, said W. A. Delong hereby acknowledges payment in full and releases of record the said mortgage indebtedness and lien on said Kansas City, Missouri, real estate, and hereby acknowledges satisfaction, payment and release of the indebtedness secured by said mortgage, together with all other notes and items of indebtedness due from said Bertha Kirkpatrick to said W. A. DeLong, and which said payment, satisfaction and release includes all of said indebtedness and any subsequent renewal thereof, which *14 payment, satisfaction and release shall become effective and complete upon and at the death of the said W. A. DeLong. "2. And the said W. A. DeLong for himself, his heirs, executors, administrators and assigns, does hereby grant, bargain, sell, convey and confirm unto the said Bertha Kirkpatrick and her heirs the following described real estate, with all buildings and improvements thereon also located in Jackson County, Kansas City, Missouri, to-wit: "Lots 1-2-3-4-5-6 Block 3, Ridge Heights, Addition to Kansas City, Missouri. "3. That upon and at the death of the said W. A. DeLong, and for value received, as above stated, the said W. A. DeLong hereby promises and agrees that from his estate there shall be paid by his personal representative to the said Bertha Kirkpatrick the sum of $37,500.00, which amount shall become due and payable upon the death of the said W. A. DeLong and bear six (6) percent interest after due until paid. "This contract, the provisions thereof, and the payments herein contained are in addition to the nominal salary heretofore paid, now being paid, and that will be paid in the future by the said W. A. DeLong, to said Bertha Kirkpatrick, and the amounts herein *15 provided by this contract shall in no way be affected or diminished by this nominal salary so paid said Bertha Kirkpatrick. "This settlement and agreement and the payments and conveyances to her herein provided, when made, as therein agreed, are received and accepted by the said Bertha Kirkpatrick in settlement and payment of all of her rights, claims and demands against the said W. A. DeLong. "That in the event of the death of the said Bertha Kirkpatrick prior to the death of the said W. A. DeLong, then and in that event, it is agreed that the heirs of the said Bertha Kirkpatrick, her executors, administrators and assigns, shall succeed to and have all of the property, rights and interest of the said Bertha Kirkpatrick, herein provided." On August 10, 1937, DeLong executed a bill of sale by which he transferred his business to the petitioner, but reserved to himself the profits derived from the business during his lifetime. On July 23, 1937, DeLong executed a codicil to his will and in that codicil he authorized and directed his executrix "to fulfill all contracts, agreements or papers * * * to or with Bertha Kirkpatrick * * * made previous to or after the date of my last Will *16 and testament, dated July 13, 1937, such contracts or agreements to be fulfilled before the bequests to the beneficiaries named in my Will." On the death of DeLong on March 5, 1939, a controversy arose among the petitioner, DeLong's heirs and the executrix of the estate of W. A. DeLong. Petitioner filed an action against the executrix to enforce the agreements made with her by DeLong. In a cross-complaint the executrix filed an action against the petitioner to discover assets of the estate. The causes of action were filed in the Circuit Court of Jackson County, Missouri. On or about September 3. 1940, both these proceedings were reduced to judgments in favor of Bertha Kirkpatrick. In the action brought by Bertha Kirkpatrick, the court found the following facts: "* * * that William A. DeLong died March 5th 1939; that at the time of his death he was a resident of Kansas City, Jackson County, Missouri, and that Alberta Jennings is the duly appointed, qualified and acting executrix of the last will and testament of said William A. DeLong, whose estate is being probated in the Probate Court of Jackson County, Missouri. And that on July 23rd 1936 the said William A. DeLong entered into *17 a written agreement with Bertha Kirpatrick for and in consideration of services rendered and to be rendered, wherein the said William A. DeLong compromised, released and satisfied a certain note executed by the said Bertha Kirkpatrick and secured by deed of trust on Lot One (1) Block Nine (9) Santa Fe Place, which said deed of trust was renewed July 6th, 1938 and said renewal deed of trust was recorded in Book B 3307 page 526 in the office of the Recorder of Deeds for Jackson County, Missouri. That by said instrument and agreement the said William A. DeLong for valuable consideration conveyed to said Bertha Kirkpatrick all his right, title and interest in and to Lots 1, 2, 3, 4, 5 and 6 Block 3 Ridge Heights, an addition to Kansas City, Missouri, and also promised and agreed to pay to Bertha Kirkpatrick the sum of $37,500.00 upon his death with interest thereon at six (6) per cent from and after the date of his death. The court further finds that the said Bertha Kirkpatrick fully carried out the terms of said agreement on her part and complied with the terms of said agreement until his death and prior to his death nursed and administered to the said William A. DeLong and superintended *18 and cared for his business and personal affairs." Thereupon the court entered the following decree: 1. That the said Bertha Kirkpatrick is the owner in fee of Lots 1, 2, 3, 4, 5 and 6 Block 3 Ridge Heights, an addition in Kansas City, Jackson County, Missouri, by virtue of the conveyance and agreement aforesaid and that said real estate constitutes no part of the estate of William A. DeLong, deceased. 2. That the said Bertha Kirkpatrick under count one of her petition is entitled to receive the deed of trust aforesaid, together with the note secured by said deed of trust upon Lot 1 Block 9 Santa Fe Place, known as 2739-41 Benton Boulevard, Kansas City, Missouri, which said deed of trust as renewed July 6th 1938 for $5,000.00 is recorded in Book B 3307 Page 526 a the office of the Recorder of Deeds in and for Jackson County, Missouri; that said Executrix is hereby ordered to cancel said deed of trust and note on the records of the Recorder of Deeds and deliver the same to the said Bertha Kirkpatrick free and clear of any claims of the said Executrix and said note and deed of trust are the sole property of the said Bertha Kirkpatrick and form no part of the assets of the estate of *19 William A. DeLong, deceased, and said note and deed of trust are hereby canceled and released. 3. It is further ordered adjudged and decreed on the second count of her petition that Bertha Kirkpatrick have judgment against the estate of William A. DeLong, deceased, in the sum of $40,875.00 as a fifth class claim, and that the costs herein shall be taxed against the estate of William A. DeLong, deceased. In the action brought against Bertha Kirkpatrick, the Court found certain facts with respect to the conveyance by DeLong of his business to the petitioner, and thereupon decreed that Bertha Kirkpatrick was entitled to recover from the estate of W. A. DeLong the sum of $7,278.86. The judgment referred to above were appealed by the estate and on or about September 11, 1940, petitioner's claims and judgments were compromised by an agreement among the petitioner, DeLong's heirs and the estate of W. A. DeLong, under which the petitioner received a net of $32,911.16 computed as follows: U.S. Treasury Bonds
$11,482.00
U.S. Bonds
8,000.00
U.S. Postal Savings
2,518.00
Other real estate
3,000.00
Cash, notes receivable, etc
19,732.82
Cancellation of mortgage indebtedness
4,734.00
Real estate, Lots 1, 2, 3, 4, 5 and 6,
Block 3, Ridge Heights, Kansas City,
Mo.
10,000.00
Value of coal business operated under
the name of DeLong Coal Company
3,117.14
Profits for 1939 and 1940 withdrawn or
used to purchase assets
4,027.20
Total received
$66,611.16
Less: Amount paid heirs in settlement of suit
28,000.00
Attorneys' fees
5,700.00
Net compensation received
$32,911.16
*20 The sum of $32,911.16 was received by the petitioner in full settlement for the special services rendered by her to DeLong; it did not cover in any amount the services rendered by her to him as his bookkeeper. No part of the money or other assets received by the petitioner under the settlement was reported by the petitioner in any tax return. Petitioner has failed to assign as error the Commissioner's determination with respect to the imposition of the negligence penalty pursuant to section 293 (a), I.R.C.[1] Also, the petitioner has failed to make any showing as to the reason for not reporting this compensation and has failed to introduce any evidence to establish that the failure on her part to report such compensation was not due to negligence or intentional disregard of the rules and regulations. This Court has consistently held that its decision will be limited to the assignments of error contained in the petition filed by the taxpayer, M. C. Parrish & Co., 3 T.C. 119, 129. Cf. Lenox Clothes Shops, Inc., v. Commissioner, 139 F.2d 56, reversing 45 B.T.A. 1122; also that it will not *21 consider issues not placed before it by the pleadings, Warner G. Baird, 42 B.T.A. 970, 975; The John Gerber Co., 44 B.T.A. 26, 31; H. Elkan & Co., 2 T.C. 597, 606, 607; Mason L. Dean, 35 B.T.A. 839, 846; William H. Joseph, 43 B.T.A. 273, 274; Citizens National Trust and Savings Bank of Los Angeles, 34 B.T.A. 140, 145. Petitioner's failure to offer any evidence at the trial to explain why she did not report the receipt of any part of this compensation in her 1940 return also justifies the imposition of the negligence penalty, Edmond A. Hughes, 27 B.T.A. 1022; Thomas J. Avery, 11 B.T.A. 958; Louis Wald, 8 B.T.A. 1003. We, therefore, hold that there shall be added to the petitioner's income tax liability for 1940 a sum equal to 5 per cent of the deficiency to be determined under Rule 50. *22 The only issue properly raised by the pleadings is whether the petitioner is entitled to the advantage afforded by section 107, I.R.C., as added by section 220 of the Revenue Act of 1939. [2] The respondent concedes on brief that, "The services rendered by petitioner were personal services and covered a period of more than five calendar years"; but he contends that, "The circumstances, however, do not meet the requirement that not less than 95 percent of the compensation be paid only on completion of such services." In support of this contention, respondent advances two theories. The first of these theories is expressed in his brief as follows: Petitioner received approximately $54,311.16 for the services rendered, $21,400.00 thereof at the rate of $100.00 per month from May 1921 until March 1939 and $32,911.16 in lump-sum settlements. The $21,400.00 received monthly over the period of years constitutes approximately 40 percent of the total compensation received. It is evident that the compensation received in 1940 does not meet the requirements of section 107 of the Internal Revenue Code, supra, in that less than 95 percent of the total compensation was received in that year. *23 After calling attention to the petitioner's contention that she had performed two separate services for her employer, first as bookkeeper and second as nurse and business advisor, the respondent says, "The services performed by petitioner for her employer cannot be segregated, separated or divided." It thus appears that the parties herein present us with a question of fact, as to whether the petitioner performed *24 two separate services for her employer, or a single integrated service. We are convinced, after carefully examining all the evidence, that as a matter of fact the compensation received by the petitioner as bookkeeper was separate and distinct from that received by her for personal services as a practical nurse and business manager and advisor. The employment as bookkeeper was entered into at a time different from that as nurse, business manager and advisor. The case of Harry Civiletti, 3 T.C. 1274, upon which respondent relies, is not in point here. In the Civiletti case, the petitioner as trustee received, in 1940, $31,025.12 for receiving and paying out principal of a testamentary trust since 1929. He also had received annually his compensation for receiving and distributing income, totalling about $17,000 for the entire period. This Court held that the petitioner did not receive at least 95 per cent of the compensation for his services as trustee in 1940. That the question involved in that case was a question of the state law as to trusteeships is apparent from the following excerpts appearing on page 1276 of this Court's opinion: But we do not *25 derive, either from the statute [Sec. 285, subdivision 7 of the Surrogate's Court Act - New York] or from the many cases construing it, that a trusteeship is any the less a single trust or that the compensation, however it may be computed or from whatever fund paid, is not the compensation which the trustee receives for his personal services as such. There is one appointment, one trust, one employment. The services required of a trustee often consist of a variety of acts and functions, but his trust does not thereby fall apart into so many disconnected pieces, each separate from all the others, and separately compensable. Consideration of the Civiletti case neither affects the question nor alters our conclusion in the instant case that the petitioner herein, as a matter of fact, was paid $100 monthly from May 1921 to March 1939 only for her services as bookkeeper. We are, therefore, of the opinion that this first theory of the respondent is untenable, and that as a matter of fact petitioner's personal services to DeLong as bookkeeper were separate and apart from the other personal services rendered by her, and may not be considered as affecting the statutory provision that not *26 less than 95 per cent of the compensation for personal services be paid only on completion of such services. Respondent's second theory is expressed in his brief as follows: "Further, it is apparent that the $32,911.16 contended to have been received by petitioner in 1940 was not all received in 1940, but that $10,000 thereof was actually received in 1936. This being true, the petitioner did not even receive 95 per cent of the $32,911.16 in the taxable year involved * * *." This $10,000 represents the value of real estate in Block 3 which was part of the subject matter of the agreement dated July 23, 1936. Respondent included the value of the realty in Block 3 in his deficiency notice as having been received by the petitioner in 1940. Petitioner alleged in her petition that she received in 1940 the amounts set out in the Commissioner's deficiency notice and the respondent in his answer admitted that allegation. Even at the trial, the respondent continued to maintain that the value of the realty in Block 3 was received by the petitioner at the time of the settlement, to wit, September 11, 1940. The only questions (and the answers thereto) which the respondent asked the petitioner *27 upon trial, with respect to the realty in Block 3, were as follows: Q. Included in the agreement that you executed with Mr. DeLong on July 13, 1936, is a conveyance of certain real property, listed as Lots 1, 2, 3, 4, 5, and 6, of Block 3, Ridge Heights Addition to Kansas City, Missouri. You received that property, did you not, at the time of the settlement? A. Yes, I did at the time of his death. Q. You now own that property, do you? A. Yes, I do. Q. And the Court found that property belonged to you? A. Yes, sir. On brief, and for the first time, the respondent asserts that, on July 23, 1936, by virtue of the agreement of the same date, the petitioner received compensation for her nursing services in the amount of $10,000, the value of the realty in Block 3. The broad question, whether the petitioner is entitled to the advantage afforded by section 107 of the Internal Revenue Code is the same under both of respondent's theories; but, query, whether the respondent is entitled to prevail on his second position. Warner G. Baird, supra (975); John Gerber Co., supra.However, it is not necessary to rest our decision *28 on this ground, because we are of the opinion that consideration of the merits of the respondent's second theory discloses that his position in this respect is unsound. Although it is true that the decree of the Circuit Court of Jackson County, Missouri, in the action brought by Bertha Kirkpatrick against the executrix of the estate of W. A. DeLong provided, "That the said Bertha Kirkpatrick is the owner in fee of lots * * * Block 3 * * * by virtue of the conveyance and agreement aforesaid * * *," nevertheless that litigation and the dispute which preceded it involved the validity of the very agreement which constituted the basis of the petitioner's claim of title to realty in Block 3. The State Court in effect so found, saying that in 1936 the petitioner and DeLong entered into an agreement "for and in consideration of services rendered and to be rendered," which agreement was by the petitioner performed until his death and that she received the real estate "by virtue of the conveyance and agreement." There is not the slightest suggestion in the record of the instant case that such suit in the Circuit Court of Jackson County, Missouri, was non-adversary or collusive, or that it *29 was instituted by the petitioner herein for the purpose of gaining some tax advantage to which she was not entitled. Such being the State Court's judgment as to the source of petitioner's title to the real estate, in our opinion the dispute between the petitioner and the executrix of the estate of W. A. DeLong and the litigation of petitioner's cause of action and of the cross-complaint filed by the executrix resulted in the postponement of the receipt of any income to the petitioner, in so far as the value of the real estate in Block 3 is concerned, until 1940. The Circuit Court of Appeals for the Fourth Circuit under analogous circumstances in the case of Morton v. Commissioner, 104 F.2d 534, 536, stated as follows: It has been held in numerous cases that whenever a transaction between two parties gives rise to claims and counterclaims, and litigation ensues involving the rights of claims of both, neither party sustains a loss or realizes income from that transaction until the litigation is finally determined, or settled by agreement of the parties. Consolidated Tea Company v. Bowers, D.C. 19 F.2d 382; Fwing-Thomas Converting Company v. McCaughn, 3 Cir., 43 F.2d 503. *30 The Board has held to the same effect in a number of cases. Russel Wheel & Foundry Co. v. Com'r, 3 B.T.A. 1168 [Dec. 1360]; Manville Jenckes Co. v. Com'r, 4 B.T.A. 765 [Dec. 1611]; Pacific Novelty Co. v. Com'r, 5 B.T.A. 1017 [Dec. 2047]; Peninsula Shipbuilding Co. v. Com'r, 9 B.T.A. 189 [Dec. 3108]; Arabol Manufacturing Co. v. Com'r, 26 B.T.A. 1068 [Dec. 7749]. And to the foregoing citations, we add the following: Swastika Oil & Gas Co. v. Commissioner, (6th Cir.), 123 F.2d 382; London-Butte Gold Mines Co. v. Commissioner, (10th Cir.), 116 F.2d 478; H. Liebes & Co. v. Commissioner, (9th Cir.), 90 F.2d 932; Edward and John Burke, Ltd., 3 T.C. 1031; J. E. Farrell, 45 B.T.A. 162, affd., 134 F.2d 193. We conclude that the petitioner is entitled to the advantage afforded by section 107, I.R.C., in computing her income tax *31 liability for 1940. Decision will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. (a) Negligence. - If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, except that the provisions of section 272 (i), relating to the prorating of a deficiency, and of section 292, relating to interest on deficiencies, shall not be applicable.↩
2. SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF FIVE YEARS OR MORE. In the case of compensation (a) received, for personal services rendered by an individual in his individual capacity, or as a member of a partnership, and covering a period of five calendar years or more from the beginning to the completion of such services, (b) paid (or not less than 95 per centum of which is paid) only on completion of such services, and (c) required to be included in gross income of such individual for any taxable year beginning after December 31, 1938, the tax attributable to such compensation shall not be greater than the aggregate of the taxes attributable to such compensation had it been received in equal portions in each of the years included in such period.↩