H. ELKAN & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109559.    Promulgated August 24, 1943.

*Harry D. Orr, Jr., Esq.,* and *Jay C. Halls, Esq.,* for the petitioner.
*John D. Kiley, Esq., David Altman, Esq.,* and *Harold H. Hart, Esq.,* for the respondent.

600

OPINION.

TURNER, *Judge:* At December 31, 1937, petitioner was obligated under 73 contracts for March delivery of hides. The said contracts

had been sold during the taxable year and, on the basis of market prices existing at December 31, 1937, could have been closed on that date at a profit to the petitioner of $153,656. They were not closed until some time in 1938, but in determining the deficiency herein, the respondent has included as income to the petitioner in 1937 the gain which would have been realized if the contracts had been closed on December 31. Such action is explained in his deficiency notice as follows:

(a) Your method of accounting, by deducting unrealized losses in your inventories through pricing them at cost or market whichever is lower, and not including unrealized gains on open short sales contracts in income at the end of the year, does not reflect correct income. The income reported on your 1937 income tax return is, therefore, adjusted under section 22 (c) of the Revenue Act of 1936 by allowing unrealized losses to be deducted through the pricing of inventories at cost or market whichever is lower, and including in income unrealized gains on all short sales at the end of the year.

Generally speaking, appreciation in the value of property, or, to state it differently, unrealized profit thereon, is not taxable. The gain or profit must be realized. *Eisner* v. *Macomber*, 252 U. S. 189; *Merchants Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509; *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11. Also as a general proposition, we think it may be safely said that in the case of a short sale no profit or loss is realized or sustained "until by the covering purchase the obligation of the short sale is discharged." *Robert W. Bingham*, 27 B. T. A. 186. See also *H. S. Richardson*, 42 B. T. A. 830; *Arthur S. Kleeman*, 35 B. T. A. 17; *Frances Bartow Farr, Executrix*, 33 B. T. A. 557. In the instant case, the transactions in question were short sales of futures contracts, not closed until the following year, and the $153,656 added to income was the amount of gain which would have been realized if the contracts had been closed on the last day of the taxable year, and not only has the respondent in his determination of the deficiencies herein classified the said item of $153,656 as unrealized profit, but in his answer he has admitted the truth of an allegation to that effect in the petition. If therefore the respondent is to prevail, justification for his determination must be found as an exception to or outside the general propositions stated.

Section 22 (c) of the Revenue Act of 1936,[1] the act here applicable, supplies or permits one exception to the general rule that only realized gains and losses are to be taken into account in determining the income of a taxpayer, and it was under that section that the respondent determined that the $153,656 of unrealized profits on the 73 short sales, as

---

[1] SEC. 22. GROSS INCOME.

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

(c) INVENTORIES.—Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

of December 31, 1937, should be taken into income to offset the unrealized loss on the physical hide inventory. That section permits the use of inventories in determining income, but provides that both the use and basis for taking inventories shall be as prescribed by the respondent with the approval of the Secretary of the Treasury.

In his regulations, article 22 (c)–1 of Regulations 94, the respondent has provided that "inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. * * * Merchandise should be included in the inventory only if title thereto is vested in the taxpayer. Accordingly, the seller should include in his inventory goods under contract for sale but not yet segregated and applied to the contract and goods out upon consignment, but should exclude from inventory goods sold, title to which has passed to the purchaser. A purchaser should include in inventory merchandise purchased, title to which has passed to him, although such merchandise is in transit or for other reasons has not been reduced to physical possession, but should not include goods ordered for future delivery, transfer of title to which has not been effected."

In article 22 (c)–2, it is provided that the inventory used "must conform as nearly as may be to the best accounting practice in the trade or business, and * * * must clearly reflect the income." One basis of valuation acknowledged by the regulation for taking inventories is cost or market whichever is lower.

The respondent argues that the petitioner's dealings in futures were hedges and, as such, a form of insurance against loss on its physical inventories, and that he is accordingly justified, under section 23 (f) of the act,[2] in applying the profit on the 73 short sales herein to offset the unrealized loss reflected by petitioner's closing inventory. He also relies on section 41 of the statute[3] as authority for his action herein. Considering the structure of the statute and the fact that section 23 (f) appears as one part of that section providing for deductions against gross income, while inventories are used as one step in determining the

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
* * * * *
(f) LOSSES BY CORPORATIONS.—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

[3] SEC. 41. GENERAL RULE.
The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year. (For use of inventories, see section 22 (c).)

amount of gross income, namely, for the purpose of determining the cost of goods sold, there would seem to be good ground for concluding that the insurance referred to in section 23 (f) has to do with the determination of the amount, if any, of realized losses allowable as deductions from gross income and has no application or part in the determination of gross income. Whatever the theorizing, however, the practical effect of the respondent's action in offsetting the unrealized profit on the 73 short sales against the unrealized loss on hides actually on hand was exactly the same as if the petitioner's method of inventories had been changed from cost or market, whichever was lower, to market, by including the 73 short sales contracts as if they were hides purchased at December 31, 1937, prices but having a market value on that date, for inventory purposes, equal to the prices at which the contracts had previously been sold. Obviously the treatment for inventory purposes of contractual obligations for the future delivery of hides not then owned, as hides currently owned, would be in direct conflict with the requirement in article 22 (c)-1 above that only merchandise the title to which is vested in the taxpayer may be included in inventory. Further, it would seem that if the respondent is sound in his view that petitioner's dealings in futures constituted a form of insurance against unrealized losses in petitioner's physical inventory, there is palpable error in his determination of the amount of such insurance available at December 31, 1937, in that he has taken into account only those transactions in futures contracts which as of that date reflected a profit and has failed to take into account both short and long transactions in respect of which the market had gone against the petitioner.

The respondent seeks to justify his action above by comparing the dealings of petitioner with those of cotton and grain dealers and by calling attention to certain of his own rulings which, in their case, permit adjustments somewhat similar to those made by him in determining the deficiencies here.[4] There are several distinctions, however, between the situations dealt with in the case of cotton and grain dealers were to bring all elements, including futures contracts, whether shown in S. M. 5693 and G. C. M. 17322, wherein it appears that the accounting practice consistently followed by the cotton and grain dealers was to bring all elements, including futures contracts, whether long or short, and the physical items on hand to market at the close of the year and not to cost or market, whichever was lower, as did the petitioner. In approving, in the case of cotton and grain dealers, the application of unrealized gains and losses in futures contracts against unrealized gains and losses disclosed by physical inventories, taken in

[4] A. R. M. 100 (1920), C. B. No. 3, p. 66; A. R. M. 135 (1921), C. B. No. 5, p. 67; S. M. 5693 (1927), C. B. V-2, p. 20; G. C. M. 17322 (1936), C. B. XV-2, p. 151; G. C. M. 18383, C. B. 1937-2, p. 244.

every instance at the market, it was held that such "dealers should incorporate in their balance sheets at the close of the taxable year at market such open futures contracts to which they are parties as are hedges against actual spot or cash transactions or against forward sales or purchases, as the case may be; provided, that no purely speculative transactions in futures not offset by actual spot or cash transactions or concurrent forward purchases or sales may be so included or taken into the taxpayer's account in any manner until such transactions are actually closed by liquidation."

First, it is to be noted that the petitioner took its physical inventory not at market, as the cotton and grain dealers did, but at cost or market, whichever was lower, and the respondent has at no time made any claim that the petitioner's basis for taking inventory should be changed. Secondly, petitioner's transactions in futures contracts were not against "actual spot or cash transactions or against forward sales or purchases." It is true that in some instances a short sale may have operated as insurance against loss on surplus physical inventories, but there were no matched transactions nor the earmarking of such sales against any specified hides or lots of hides, and, as stated in G. C. M. 17322, *supra*, "it is impossible to ascertain the extent to which gains or losses on open hedges should be reflected in income at the close of the accounting period to offset or nullify the profits or losses in inventory due to market fluctuations where the inventory is taken at cost or market, whichever is lower." In G. C. M. 17322, *supra*, the General Counsel ruled, in the case of a textile manufacturer which consistently based its inventory of cotton on cost or market, whichever was lower, as did the petitioner, that "The general accounting practice generally in use in that industry reflects gains and losses from hedging transactions only to the extent realized by those closed out within the accounting period. Separately considered, that treatment of such items is correct, for, as indicated above, the losses are not incurred expense and the gains are not accrued income, as the case may be, until the hedges are closed out." While as noted above the short sales of futures contracts did in some instances have the effect of a hedge against loss in physical inventories on hand, such result was general and incidental when considered in connection with the petitioner's operations as a whole. To a large extent, purchases of futures contracts were made not because of anticipated fluctuations in the market, but for the purpose of assuring the petitioner of a sufficient supply of hides of the grade and quality desired and needed to meet the demands of its customers in the future. It also appears that one motive for dealing in hide futures was the hope of realizing a profit through such trading, just as in transactions in the physical hides themselves. It is thus apparent that the case of the petitioner is distinguishable from and not compar-

able to that of the cotton and grain dealers dealt with in the above rulings.

We find no basis in the statute, the decisions of the courts, or the regulations or rulings of the respondent himself to sustain his action in including in the petitioner's income for 1937 the unrealized profit on the 73 short sales of futures contracts, and petitioner's claim of error is accordingly sustained.

Under the rules of the Commodity Exchange, the deposit of $600 as margin was required on each and every futures contract bought or sold. Adjustments giving effect to market fluctuations were made at the close of each business day in the account of each "clearing member" and such members were required to put up additional margin or draw down excess margin, as the case might be, so as to maintain the margin on each contract at $600. Such deposits and withdrawals by the petitioner were entered on its books in an account entitled "Variation Margin Account." This account was in the nature of a suspense account and no amounts were closed from it into profit and loss until the various futures transactions were closed on the exchange and the profit or loss from the purchase or sale of the particular contract or contracts was actually realized. When the contracts were so closed on the exchange, any profit or loss therefrom standing in the suspense account was closed into the petitioner's profit and loss account. At December 31, 1937, the "Variation Margin Account" disclosed a net balance in favor of petitioner, in the amount of $130,493.12. On brief and in the alternative, the respondent for the first time contends that this net balance represents income actually realized by the petitioner in 1937 on its futures transactions which remained open at the close of the year and that the said amount should be included in petitioner's income in determining the controversy herein.

The respondent's determination, as indicated by his notice of deficiency, included only the unrealized profit as of the close of the taxable year on 73 of the futures contracts which had been sold by petitioner during the taxable year and which remained open at the end of the year. The rationale of the determination was that these short sales were directly related to the physical inventories and that under section 22 (c), *supra*, of the statute, which governs the use of inventories in determining income, it was proper to offset the unrealized profit on short sales of futures contracts against any unrealized losses indicated by the physical inventories. The questions of both law and fact raised by the alternative contention are basically different from the questions raised by the respondent's determination and pleadings herein. The claim now advanced relates to all futures contracts and neither the petitioner's inventories nor the basis or method of taking them is in any way involved. It assumes as a factual basis that there was during

the year a net of excess margin withdrawn over margin deposited and concludes that such net withdrawals constituted realized income, under *Brown v. Helvering*, 291 U. S. 193, and *North American Oil Consolidated v. Burnet*, 286 U. S. 417, even though the futures transactions did not in and of themselves become completed transactions on which gain or loss might be computed until they were closed.

If the respondent desired to charge the petitioner with liability based on the claim now made, two courses were open to him: first, through his determination of the deficiencies herein, and, second, by affirmative allegation in his answer. He has taken neither course, and may not prevail on an issue which, under the statute and our rules of procedure, is not properly before us. Furthermore, even though the issue had been properly and timely raised by the respondent in his answer, we should not on the record before us be able to resolve the issue in his favor. In such case, the burden of proof would have been on him, and, even though we assume the correctness of his premise that a net of margin withdrawals over total margin deposits would, under the cases cited, constitute realized income, the record would not justify a conclusion of fact that the $130,493.13 net balance shown in the "Variation Margin Account" was the true net of such withdrawals, since we should be unable to conclude without further evidence that the original margin of $600 deposited on each futures contract was entered in the "Variation Margin Account" and taken into account in computing the net balance in question; and for the further reason that there is some indication in the testimony that the net balance shown in the account did include or may have included withdrawals by the petitioner on the contracts of various of its customers for whom it dealt.

*Decision will be entered under Rule 50.*