ESTATE OF DOROTHY MAKRANSKY, DECEASED, HARRY MAKRANSKY AND MURRAY J. MAKRANSKY, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD MAKRANSKY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOUIS MAKRANSKY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HARRY MAKRANSKY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SADYE MAKRANSKY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3353, 3354, 3355, 3356, 3357. Promulgated July 12, 1945.

*Samuel H. Levy, Esq.*, for the petitioners.
*W. J. McFarland, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: Petitioners primarily contend that, under sections 23 (s), 122, and 189 of the Internal Revenue Code, they are entitled to carry over the 1940 loss of the partnership of $87,808.68 as a "net operating loss carry-over" in computing their individual tax liabilities for the calendar year 1941. Subsection (s) and sections 122 and 189 were all inserted in the code by section 211 of the Revenue Act of 1939. Section 122 was later amended by section 153 of the Revenue Act of 1942. As thus explained, the material provisions of these sections are set forth in the margin.[1]

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

    \*        \*        \*        \*        \*        \*

(s) NET OPERATING LOSS DEDUCTION.—For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122.

SEC. 122. NET OPERATING LOSS DEDUCTION.

(a) DEFINITION OF NET OPERATING LOSS.—As used in this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income, with the exceptions and limitations provided in subsection (d).

The respondent contends that the loss of $95,750 on the sale of the 100 futures contracts sustained by the partnership in 1940 was a "short-term capital loss" as that term is defined in code section 117. If that be true, and since the partnership had no "short-term capital gains" during the calendar year 1940, there would be no net operating loss under 122 (a), no net operating loss carry-over under 122 (b), and no net operating loss deductions under 122 (c), for the reason that under the exceptions and limitations provided in 122 (d) "the amount deductible on account of short-term capital losses shall not exceed the amount includible on account of the short-term capital gains" and, therefore, instead of the deductions exceeding the gross income of the partnership for 1940 under section 122 (a) by $87,808.68, the gross income would exceed the deductions by $7,941.32. Petitioners, however, contend that the loss of $95,750 was not a short term capital loss, but was an ordinary business loss, or, in the alternative, an ordinary and necessary business expense deductible under code section 23 (a), as amended by section 121 of the Revenue Act of 1942, or as additional cost of goods actually taken into inventory during the pear 1940. The material provisions of code sections 117 and 23 (a), as amended, are also in the margin.[2]

(b) AMOUNT OF CARRY-BACK AND CARRY-OVER.—

(1) NET OPERATING LOSS CARRY-BACK.—If for any taxable year beginning after December 31, 1941, * * *

(2) NET OPERATING LOSS CARRY-OVER.—If for any taxable year the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the two succeeding taxable years, except that the carry-over in the case of the second succeeding taxable year shall be * * *

(c) AMOUNT OF NET OPERATING LOSS DEDUCTION.—The amount of the net operating loss deduction shall be the aggregate of the net operating loss carry-overs and of the net operating loss carry-backs to the taxable year reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) (1), (2), (3), and (4)) exceeds, in the case of a taxpayer other than a corporation, the net income (computed without such deduction), or, in the case of a corporation * * *

(d) EXCEPTIONS AND LIMITATIONS.—The exceptions and limitations referred to in subsections (a), (b), and (c) shall be as follows:

* * * * * * *

(4) Long-term capital gains and long-term capital losses shall be taken into account without regard to the provisions of section 117 (b). As so computed the amount deductible on account of long-term capital losses shall not exceed the amount includible on account of the long-term capital gains, and the amount deductible on account of short-term capital losses shall not exceed the amount includible on account of the short-term capital gains: * * *

SEC. 189. NET OPERATING LOSSES.

The benefit of the deduction for net operating losses allowed by section 23 (s) shall not be allowed to a partnership but shall be allowed to the members of the partnership under regulations prescribed by the Commissioner with the approval of the Secretary.

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business,

Was the loss of $95,750 on the sale of the 100 futures contracts a short term capital loss? The answer depends upon whether such contracts were or were not "capital assets" as that term is defined in code section 117. Under this definition the term "means property held by the taxpayer" with certain specified exceptions. These exceptions are (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or (2) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or (3) property used in the trade or business of a character which is subject to the statutory allowance for depreciation.

Petitioners contend that the contracts fall within the first exception as representing property of a kind which would properly be included in the inventory of the partnership if on hand at the close of the year. They argue that if, as originally intended, the partnership had taken delivery of the wool tops, and the wool tops had been on hand at the close of the year, there would be no question as to the inclusion in the inventory of the wool tops. Because of changed conditions, namely, the influx of Cape wools, and the availability again of piece goods, the partnership decided not to take delivery of the wool tops, but to dispose of the futures contracts instead. Petitioners further argue that it is difficult to see a legal or practical justification for drawing a distinction between the tax treatment to be given losses realized on the disposition of materials physically taken into inventory and losses realized where futures contracts are disposed of before actual receipt of the commodities specified in the contracts due to a change in conditions over which the partnership had no control.

In *Anna M. Harkness*, 1 B. T. A. 127, 130, this statement appears:

It seems to us to be fundamentally unsound to determine income tax liability by what might have taken place rather than by what actually occurred. Even though the practical effect may be the same in either case, the resulting tax liability may be quite different. *United States* v. *Isham*, 17 Wall. 496.

In the instant proceedings what actually occurred was a purchase and sale of futures contracts. It is well settled that such contracts

---

or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1) ;

\* \* \* \* \* \* \*

(3) SHORT-TERM CAPITAL LOSS.—The term "short-term capital loss" means loss from the sale or exchange of a capital asset held for not more than 18 months, if and to the extent such loss is taken into account in computing net income.

SEC.-23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :
(a) Expenses.—
(1) TRADE OR BUSINESS EXPENSES.—
(A) IN GENERAL.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business \* \* \*

are not to be included in the inventory. See sec. 19.22 (c)–1, Regulations 103; A. R. R. 100, C. B. No. 3, p. 66; A. R. M. 135, C. B. No. 5, p. 67; *Commissioner* v. *Covington*, 120 Fed. (2d) 768, 771; certiorari denied, 315 U. S. 822; *Tennessee Egg Co.*, 47 B. T. A. 558. In fact the partnership did not include the contracts in its inventory at the close of the year 1939 and it would have been improper to have done so. The only account it had on its books at that time relative to the contracts in question was the account with E. A. Pierce & Co. showing a debit balance of $75,000 for the margins that were up at that time. Neither were the futures contracts stock in trade nor property held primarily for sale to customers in the ordinary course of the partnership's trade or business. *Commissioner* v. *Covington, supra.* It is obvious that the contracts were not property of a character which is subject to the statutory allowance for depreciation, and we do not understand petitioners to so contend. The contracts were held by the partnership for less than 18 months. It follows, therefore, that the loss of $95,750 was a short term capital loss, unless it resulted from a true hedge as that term is commonly and usually understood. That brings us to petitioners' alternative contention that the loss was an ordinary and necessary business expense, because it was incurred in hedging operations.

It has long been the practice of the Commissioner and the courts to treat losses from hedging transactions as essentially insurance and deductible as ordinary and necessary business expense rather than losses from dealings in capital assets. See G. C. M. 17322, C. B. No. XV–2, p. 151; *Ben Grote*, 41 B. T. A. 247; *Commissioner* v. *Farmers & Ginners Cotton Oil Co.*, 120 Fed. (2d) 772; *Kenneth S. Battelle*, 47 B. T. A. 117. "Losses from true hedges are allowed in full." *Commissioner* v. *Farmers & Ginners Cotton Oil Co., supra.* In that case the Fifth Circuit also said:

A hedge is a form of price insurance; it is resorted to by business men to avoid the risk of changes in the market price of a commodity. The basic principle of hedging is the maintenance of an even or balanced market position. To exercise a choice of risks, to sell one commodity and buy another, is not a hedge; it is merely continuing the risk in a different form. * * *

In G. C. M. 17322, *supra*, relating to the treatment of hedging transactions for Federal income tax purposes, after describing the hedging customs of a certain cotton textile manufacturer, it is said:

Such hedges, which eliminate speculative risks due to fluctuations in the market price of cotton and thereby tend to assure ordinary operating profits, are common trade practices and are generally regarded as a form of insurance (the only kind available as protection against such risks) necessary to conservative business operation. Where futures contracts are entered into only to insure against the above-mentioned risks inherent in the taxpayer's business,

the hedging operations should be recognized as a legitimate form of business insurance. As such, the cost thereof (which includes losses sustained therein) is an ordinary and necessary expense deductible under section 23 (a) of the Revenue Act of 1934 and corresponding provisions of prior Revenue Acts.   *   *   *

Petitioners contend that the partnership's situation relative to the futures contracts was similar to the situation relative to the "futures transactions (short) in *cotton* during 1936" in *Kenneth S. Battelle, supra.* We fail to see any similarity between the two situations. It is true that on its books of account the partnership on December 31, 1940, charged the loss of $95,750 to "Woolens Purchases" and credited E. A. Pierce & Co. with a like amount, with the explanation: "Cost of hedgings to protect purchases of woolens."

Petitioner was and is a manufacturer of men's suits from piece goods purchased from worsted mills. The partnership sold its finished products to retailers who were contracted seasonably by its various salesmen. There is no evidence that petitioner used a method of hedging against present sales of its clothing suits by the purchase of future wool tops contracts. On the contrary, the evidence seems to show conclusively that the purchase of the 100 wool tops contracts in September 1939, which it disposed of in February 1940, was not a balancing transaction against sales of clothing, but was an isolated transaction and one made because of the more or less panicky condition which arose after the outbreak of the war in September 1939 respecting the future supply of woolen piece goods. The transaction turned out badly for petitioner and the loss which it suffered could be carried over as an ordinary business net loss and used as a deduction in the next taxable year were it not for the provisions of the the statute which we have quoted in the margin. In view, however, of the statutory definition of capital assets, we feel we must hold that the wool tops contracts were capital assets and that the partnership's transactions in these contracts did not represent hedging transactions as that term is ordinarily understood, and petitioners' loss in the transactions must be adjudged a short term capital loss. *Commissioner* v. *Farmers & Ginners Cotton Oil Co., supra.* Certainly, in the latter case, the transactions of the taxpayer more nearly resembled a true hedge than those of the instant case, yet the court held against the taxpayer.

It follows from what we have said that the respondent's several determinations in these consolidated proceedings must be sustained and that petitioners are not entitled to deduct from their 1941 income any net operating loss carry-over on account of the partnership's wool tops futures contracts.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

OPPER, *J.*, dissents.

SMITH, *J.*, dissenting: The partnership of S. Makransky & Sons, Inc., had a loss in 1940 from the sale of certain contracts for the purchase of wool tops for delivery at a future date. It apprehended, due to war conditions, that it would be unable to secure woolen cloth for its requirements for the manufacture of men's suits. To insure itself a supply of such cloth it purchased the contracts in question. Early in 1940 it was apparent that the apprehended scarcity would not materialize; also that the wool tops which might be delivered to it under its contracts would be of an inferior grade. This being so, it sold its future contracts in February 1940, sustaining a loss upon the transaction of $95,750. The opinion of the Tax Court is that the loss is not a legal deduction from gross income upon the ground that it was a short term capital loss and that, since the partnership had no short term capital gains, the deduction of the loss must be disallowed.

It seems to me that the result is unjustified. It certainly should not be reached unless the wording of the statute requires it. Clearly, the investment in the wool tops futures was an ordinary business operation. At the time the contracts were purchased the partnership expected to take delivery of the wool tops. It was simply insuring itself against an apprehended scarcity of material. If the partnership had taken delivery under its contracts and then sold the woolen tops there would be no question, I think, but that the loss which might have been sustained would have been a legal deduction from gross income.

The situation is comparable to that of a corporation which contracts for the purchase of automobile trucks or other machinery to be delivered in the future. Before the time for delivery the corporation finds that it can purchase its requirements of trucks and machinery from another source possibly more advantageously. It therefore gives a certain amount for the rescission of its contract or sells its right for the delivery of the machinery to other parties at a loss. It would seem to me that in such a situation the claimed deduction would be an ordinary and necessary business expense. Every consideration of justice and fair play as between the taxing authority and the taxpayer argues for the allowance of the deduction. It seems to me that it is highly hypertechnical to disallow the deduction as an ordinary and necessary expense.

The Tax Court rejects the petitioners' claim that the amount is deductible as an ordinary and necessary expense. It then says that the amount can not be deducted at all because it was a short term capital loss against which the petitioners had no short term capital gains for the year 1940. It says that the loss did not arise from a hedging transaction and that therefore the loss may not be deducted,

in accordance with *Commissioner* v. *Farmers & Ginners Cotton Oil Co.*, 120 Fed. (2d) 772; certiorari denied, 314 U. S. 683. In that case it was held that where a dealer in cottonseed oil bought refined oil futures because it had insufficient storage facilities for crude oil and had been compelled to sell crude oil at unsatisfactory prices, it merely exchanged its market risk from crude to refined oil, and losses were not deductible in their entirety in computing income tax, since they did not result from true "hedges," notwithstanding price relation between crude and refined oil. The court found:

\* \* \* Petitioner could have demanded delivery of refined oil under any futures contract, but made no such demand, and the contracts were entered into by it with the intention not to demand or receive such delivery. \* \* \*

The facts in that case were somewhat different from those which obtain in the instant proceeding; for here the partnership did intend to take delivery upon the wool tops at the time it purchased the futures contracts.

In the above referred to case the Tax Court decided that the taxpayer was entitled to deduct its loss. 41 B. T. A. 1083. Our decision in that case was reversed by a divided court. The Supreme Court denied a writ of certiorari. But the Supreme Court has many times said that the denial of a writ of certiorari is not tantamount to the affirmance of the decision of the lower court.

It may at once be admitted that an ordinary hedging transaction is one where a person attempts to hedge against a loss by the purchase or sale of a future contract on a stock exchange or a commodity exchange. But I do not think that a hedging contract should be limited to that definition. The partnership with which we are here concerned attempted to hedge against a loss in business operations for 1940 by securing for itself a supply of wool tops from which it could have cloth for the manufacture of men's suits. That seems to me to be as much a hedging contract as one where the contract is simply to protect one's self against a fluctuation in price. It seems to me that it was in essence a hedging contract.

Furthermore, I do not think that the definition of capital gains was ever intended to apply to a contract of this character. To be sure, the partnership when it purchased the future contracts in 1939 had a species of property. It had an investment in the contracts and, undoubtedly, at some time after the purchase it could have sold those contracts to recover back at least a part of the amount it had invested in them.

The situation here seems to me to be comparable to that which obtained in *Palmer* v. *Commissioner*, 302 U. S. 63. In that case the taxpayer had received warrants from the American Superpower Co. entitling him to purchase from it shares of stock in other corporations.

which it owned. The rights had a large market value at the time they were received by Palmer. He exercised the rights and acquired the shares. The Commissioner determined that Palmer received taxable income by the receipt of the warrants to the extent of their value. The Board of Tax Appeals reversed his determination and that reversal was sustained by the Supreme Court. That Court simply gave a sensible construction to the statute and held that Palmer did not derive taxable income merely from the receipt of the warrants.

So here, I think that we should give a sensible construction to the statute and hold that the net income of the partnership for 1940 was what remained after the deduction of the loss sustained on the sale of the future contracts for the purchase of the wool tops.

---

LEECH, *J.*, dissenting: In general I agree with the foregoing dissent. Since some of my reasons for dissenting may be different, it may be well to state them.

The propriety of the disputed "net operating loss carry-over" turns on the deductibility of a very real loss petitioners sustained in the transaction in wool "futures." Sec. 122, I. R. C. This loss, if deductible at all, must be so as a "hedge" and therefore a business expense, or as an ordinary loss. The majority holds it is neither. I disagree.

Futures transactions, in order to be clasified as a true "hedge," need not occur in any particular step of the business cycle in which the taxpayer is engaged. The term means a form of insurance of the profits of a business. So, if the "futures" were purchased by the partnership to insure the profitable conduct of any step in *its* business, they were a true "hedge." See *Commissioner* v. *Farmers & Ginners Cotton Oil Co.*, 120 Fed. (2d) 772; certiorari denied, 314 U. S. 683.

The majority opinion is premised upon, *inter alia*, the following finding of fact:

> The partnership purchased the 100 contracts for the future delivery of wool tops as a means of acquiring the wool tops and with the intention and purpose of taking delivery of the wool tops for manufacture into piece goods which they would use in their business of manufacturing men's suits.

This finding affords substantial, if not incontrovertible, proof of the fact that the purchase of the "futures" here was not in reality a purchase of "futures contracts" at all, but rather the first step in the actual and intended purchase of the wool itself for future delivery. If so, this wool would have been excluded from "capital assets" by the first exception in the definition of that term appearing in section 117 (a) (1) of the Internal Revenue Code, and its sale would have resulted in an ordinary and not a capital loss.

In my opinion, the transaction in "futures" here was either a true "hedge" or resulted in an ordinary loss. In either event the amount of this actual loss was deductible in the computation of the "net loss carry-over." The case of *H. Elkan & Co.*, 2 T. C. 597, if not distinguishable on the facts, I think should be overruled.

MELLOTT, *J.*, agrees with this dissent.