Smith, /., dissenting: The partnership of S. Makransky & Sons, Inc., had a loss in 1040 from the sale of certain contracts for the purchase of wool tops for delivery at a future date. It apprehended, due to war conditions, that it would be unable to secure woolen cloth for its requirements for the manufacture of men’s suits. To insure itself a supply of such cloth it purchased the contracts in question. Early in 1940 it was apparent that the apprehended scarcity would not materialize; also that the wool tops which might be delivered to it under its contracts would be of an inferior grade. This being so, it sold its future contracts in February 1940, sustaining a loss upon the transaction of $95,750. The opinion of the Tax Court is that the loss is not a legal deduction from gross income upon the ground that it was a short term capital loss and that, since the partnership had no short term capital gains, the deduction of the loss must be disallowed. It seems to me that the result is unjustified. It certainly should not be reached unless the wording of the statute requires it. Clearly, the investment in the wool tops futures was an ordinary business operation. At the time the contracts wore purchased the partnership expected to take delivery of the wool tops. It was simply insuring itself against an apprehended scarcity of material. If the partnership had taken delivery under its contracts and then sold the woolen tops there would be no question, I think, but that the loss which might have been sustained would have been a legal deduction from gross income. The situation is comparable to that of a corporation which contracts for the purchase of automobile trucks or other machinery to be delivered in the future. Before the time for delivery the corporation finds that it can purchase its requirements of trucks and machinery from another source possibly more advantageously. It therefore gives a certain amount for the rescission of its contract or sells its right for the delivery of the machinery to other parties at a loss. It would seem to me that in such a situation the claimed deduction would be an ordinary and necessary business expense. Every consideration of justice and fair play as between the taxing authority and the taxpayer argues for the allowance of the deduction. It seems to me that it is highly hypertechnical to disallow the deduction as an ordinary and necessary expense. The Tax Court rejects the petitioners’ claim that the amount is deductible as an ordinary and necessary expense. It then says that the amount can not be deducted at all because it was a short term capital loss against which the petitioners had no short term capital gains for the year 1940. It says that the loss did not arise from a hedging transaction and that therefore the loss may not be deducted, in accordance with Commissioner v. Farmers & Ginners Cotton Oil Co., 120 Fed. (2d) 772; certiorari denied, 314 U. S. 683. In that case it was held that where a dealer in cottonseed oil bought refined oil futures because it had insufficient storage facilities for crude oil and had been compelled to sell crude oil at unsatisfactory prices, it merely exchanged its market risk from crude to refined oil, and losses were not deductible in their entirety in computing income tax, since they did not result from true “hedges,” notwithstanding price relation between crude and refined oil. The court found: * * * Petitioner could have demanded delivery of refined oil under any futures contract, but made no such demand, and the contracts were entered into by it with the intention not to demand or receive such delivery. * * * The facts in that case were somewhat different from those which obtain in the instant proceeding; for here the partnership did intend to take delivery upon the wool tops at the time it purchased the futures contracts. In the above referred to case the Tax Court decided that the taxpayer was entitled to deduct its loss. 41 B. T. A. 1083. Our decision in that case was reversed by a divided court. The Supreme Cburt denied a writ of certiorari. But the Supreme Court has many times said that the denial of a writ of certiorari is not tantamount to the affirmance of the decision of the lower court. It may at once be admitted that an ordinary hedging transaction is one where a person attempts to hedge against a loss by the purchase or sale of a future contract on a stock exchange or a commodity exchange. But I do not think that a hedging contract should be limited to that definition. The partnership with which we are here concerned attempted to hedge against a loss in business operations for 1940 by securing for itself a supply of wool tops from which it could have cloth for the manufacture of men’s suits. That seems to me to be as much a hedging contract as one where the contract is simply to protect one’s self against a fluctuation in price. It seems to me that it was in essence a hedging contract. Furthermore, I do not think that the definition of capital gains was ever intended to apply to a contract of this character. To be sure, the partnership when it purchased the future contracts in 1939 had a species of property. It had an investment in the contracts and, undoubtedly, at some time after the purchase it could have sold those contracts to recover back at least a part of the amount it had invested in them. The situation here seems to me to be comparable to that which obtained in Palmer v. Commissioner, 302 U. S. 63. In that case the taxpayer had received warrants from the American Superpower Co. entitling him to purchase from it shares of stock in other corporations. which it owned. The rights had a large market value at the time they were received by Palmer. He exercised the rights and acquired the shares. The Commissioner determined that Palmer received taxable income by the receipt of the warrants to the extent of their value. The Board of Tax Appeals reversed his determination and that reversal was sustained by the Supreme Court. That Court simply gave a sensible construction to the statute and held that Palmer did not derive taxable income merely from the receipt of the warrants. So here, I think that we should give a sensible construction to the statute and hold that the net income of the partnership for 1940 was what remained after the deduction of the loss sustained on the sale of the future contracts for the purchase of the wool tops. Leech, J., dissenting: In general I agree with the foregoing dissent. Since some of my reasons for dissenting may be different, it may be well to state them. The propriety of the disputed “net operating loss carry-over” turns on the deductibility of a very real loss petitioners sustained in the transaction in wool “futures.” Sec. 122,1. R. C. This loss, if deductible at all, must be so as a “hedge” and therefore a business expense, or as an ordinary loss. The majority holds it is neither. I disagree. Futures transactions, in order to be clasified as a true “hedge,” need not occur in any particular step of the business cycle in which the taxpayer is engaged. The term means a form of insurance of the profits of á business. So, if the “futures” were purchased by the partnership to insure the profitable conduct of any step in its business, they were a true “hedge.” See Commissioner v. Farmers & Ginners Cotton Oil Co., 120 Fed. (2d) 772; certiorari denied, 314 U. S. 683. The majority opinion is premised upon, inter alia, the following finding of fact: The partnership purchased the 100 contracts for the future delivery of wool tops as a means of acquiring the wool tops and with the intention and purpose of taking delivery of the wool tops for manufacture into piece goods which they would use in their business of manufacturing men’s suits. This finding affords substantial, if not incontrovertible, proof of the fact that the purchase of the “futures” here was not in reality a purchase of “futures contracts” at all, but rather the first step in the actual and intended purchase of the wool itself for future delivery. If so, this wool would have been excluded from “capital assets” by the first exception in the definition of that term appearing in section 117 (a) (1) of the Internal Revenue Code, and its sale would have resulted in an ordinary and not a capital loss. In my opinion, the transaction in “futures” here was either a true “hedge” or resulted in an ordinary loss. In either event the amount of this actual loss was deductible in the computation of the “net loss carry-over.” The case of H. Elkan & Co., 2 T. C. 597, if not distinguishable on the facts, I think should be overruled. Mellott, J., agrees with this dissent.